PHILLIPS PETROLEUM COMPANY, Plaintiff and Counterdefendant-Appellee, *v.* NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Counterdefendant and Counterplaintiff-Appellant.—(GENERAL AMERICAN TRANSPORTATION COMPANY, Counterplaintiff and Counterdefendant-Appellee.)

Fourth District No. 16229

Opinion filed May 26, 1981.—Rehearing denied July 1, 1981.

John E. Guy, of Abramson & Fox, of Chicago, for appellant.

Robert D. Owen, Marshall A. Susler, and Linda M. Castleman, all of Owen, Roberts, Susler & Murphy, of Decatur, and Heyl, Royster, Voelker & Allen, P. C., of Peoria (William K. Voelker and Rex K. Linder, Jr., of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

On July 19, 1974, in the switchyards of the Norfolk & Western Railway Company (N&W), in the city of Decatur, Macon County, Illinois, the steel head of a jumbo railroad tank car containing liquefied petroleum gas (LPG) was punctured by a coupler of a boxcar during a switching operation. The explosions and fires which followed caused seven deaths, injured many people, and did millions of dollars of property damage. The punctured tank car, known as GATX 41623, had been manufactured by General American Transportation Company (GATX) in 1971 and leased by GATX to Phillips Petroleum Company (Phillips). On the day of the accident, Phillips was using this car to ship LPG from Tuscola, Illinois, to a Phillips plant at East St. Louis, Illinois. The Baltimore & Ohio Railroad transported GATX 41623, along with four other jumbo tank cars owned by Phillips, from Tuscola to Decatur, where they were turned over to the N&W through the railroad interchange. At the time of the accident, the five tank cars were being transferred onto a classification track in the center of the switchyard. The switchyard is saucer-shaped, with slight slopes from the ends of the tracks downward toward the center of the yard. Because of the slopes, the switching crew was able to release the five tank cars to roll free as a unit through the switch onto classification track 11 toward the center of the yard. The speed of the rolling tank cars was a disputed fact at trial. Also located on track 11 was a string of nine loaded grain hopper cars and a free-standing boxcar, all of which had been switched onto the track earlier. The string of tank cars struck the boxcar. Upon impact, the boxcar's coupler separated vertically and moved upward until it penetrated the head of tank car GATX 41623. This allowed the LPG to escape, which fueled the explosions and fires that followed.

In the aftermath of the disaster, a suit was filed by the administrator of the estate of Clyde Rucker, an employee of the railroad, on October 15, 1974, in Madison County, Illinois, against N&W alleging statutory liability under the Federal Employers' Liability Act (45 U.S.C.A. §§51-60 (1972)) and the Safety Appliance Act (45 U.S.C.A. §§1-46 (1972)), and also against GATX and Phillips asserting a theory of product liability. N&W filed its answer in the *Rucker* suit in July of 1975, and, on September 25, 1975,

with leave of court, filed a counterclaim against GATX and Phillips, seeking indemnity from both.

In the meantime on September 5, 1975, Phillips filed an action in Macon County seeking indemnity from N&W and its switching crew. Phillips' complaint contained counts asserting active-passive negligence, a contractual remedy under the terms of the bill of lading, and a right to declaratory judgment. The circuit court of Macon County granted a motion by Phillips to consolidate N&W's Madison County counterclaim with Phillips' suit in Macon County. After N&W's petition for leave to appeal from the consolidation order was denied by this court, the Macon County court ordered the circuit court of Madison County to forward its file of the case, but Judge John Gitchoff, sitting in Madison County, responded with an order directed to the Madison County circuit clerk *not* to forward the file. As a result, Phillips' petitioned for a writ of *mandamus* in the Illinois Supreme Court. The writ was denied, but the court, pursuant to its general administrative and supervisory authority over all State courts (Ill. Const. 1970, art. VI, §16), directed that the Madison County clerk transmit N&W's counterclaim to Macon County and "that no further action be taken in Madison County to interfere with orders entered in the Macon County proceedings." (*People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 257, 357 N.E.2d 534, 539.) In so holding, the supreme court stated:

> "It is entirely clear that the pendency before different judges of separate suits involving identical parties and issues is incompatible with the orderly and efficient administration of justice. It is equally clear that irrespective of the propriety of the Macon County order consolidating the proceedings, the refusal of the Madison County court to abide by that order was improper. One circuit judge may not review or disregard the orders of another circuit judge in the judicial system of this State [citation], and such action can only serve to diminish respect for and public confidence of our judiciary [citation]." 65 Ill. 2d 249, 257, 357 N.E.2d 534, 538.

Subsequently, GATX was granted leave to join in the Macon County suit as coplaintiff against N&W, asserting a cause of action for indemnity based upon active-passive negligence, and the cause proceeded to trial before a jury. N&W presented its case for indemnity based upon product liability against GATX and Phillips first. At the conclusion of the evidence, the trial court granted counterdefendants' motions for directed verdicts against N&W with a finding that N&W had not proved a *prima facie* case of product liability.

Next, Phillips and GATX introduced evidence in support of their complaints for indemnification based upon active-passive negligence. At the conclusion of the trial, the jury returned general verdicts in favor of

GATX and Phillips, and the court entered judgments upon those verdicts. The trial court denied N&W's post-trial motion, and this appeal followed.

The threshold question raised by N&W is whether the trial court erred in consolidating the railroad's Madison County counterclaim with the Macon County suit, thus, it is argued, forcing N&W to try its indemnity claim in a forum not of its choosing. The Macon County proceedings which are the subject of this appeal were conducted pursuant to the supervisory order of the supreme court entered in the *Gitchoff* case, and we are aware that the merits of the original consolidation order have never been reviewed. The supreme court could have done so but elected instead to dispose of that appeal by supervisory order. Any attempt by us to review the merits of the consolidation would place this court in the position of considering a result contrary to that reached by the supreme court. Since the appellate court has no authority to countermand a supervisory order of the supreme court, we must decline to consider whether the consolidation order was proper. Instead, we hold that the Macon County circuit court did not err when it proceeded to trial in accordance with a direct order of the supreme court.

N&W's next contention is that the trial court erred when it denied a motion to dismiss the complaints of Phillips and GATX for failure to state a cause of action. N&W argues that under the facts of this case, Phillips and GATX can be liable to third persons only upon the basis of product liability, and under the law of Illinois controlling here,[1] a manufacturer who is strictly liable in tort for placing a defective product into the stream of commerce cannot have indemnity against the employer of an injured person who was using the product, citing, *inter alia, Templeton v. Blaw-Knox Co.* (1977), 49 Ill. App. 3d 1057, 365 N.E.2d 235, and *Old Second National Bank v. Bynal Products, Inc.* (1979), 79 Ill. App. 3d 432, 398 N.E.2d 626. The cause was submitted to the jury solely upon the theory that N&W was guilty of active misconduct in the mishandling of switching operations while GATX as manufacturer and Phillips as shipper were guilty, at most, of a passive or technical misconduct. GATX alleged that its role in manufacturing the tank car in accordance with Federal specifications and criteria established by the railroad industry was less active than the role of N&W whose employees' negligent misconduct was the direct cause of the disaster. We should further note that the product liability claims do not involve allegations of a physical defect in the tank car but rather of an unreasonably dangerous design.

---

[1] Events occurring on or after March 1, 1978, will give rise to contribution or indemnity in favor of a strictly liable manufacturer of a defective product against a subsequent user of the product, pursuant to *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and companion cases. *Old Second National Bank v. Bynal Products, Inc.* (1979), 79 Ill. App. 3d 432, 398 N.E.2d 626.

GATX and Phillips are asserting what is sometimes called "downstream" indemnity against N&W as a subsequent user or handler of the tank car. This kind of indemnity action is to be distinguished from an "upstream" indemnity claim against a previous handler of the product. See, *e.g., Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857, where an "upstream" indemnity action was allowed.

The case at bar is controlled by those cases where the "downstream" indemnity action has not been allowed. In *Harms v. Caterpillar Tractor Co.* (1980), 80 Ill. App. 3d 262, 399 N.E.2d 722, the issue was whether a designer of a product may be obligated under the theory of strict liability in tort to indemnify the supplier and manufacturer of the product. In that case, Caterpillar had designed a hopper to be used in a dust collector on Caterpillar's premises, and Mechanical Rubber & Supply Co. was responsible for fabricating the hopper and sending it to the plant site where an ironworker was injured while the hopper was being erected. The injured employee filed a product liability action against Mechanical Rubber, and Mechanical Rubber filed a third-party complaint against Caterpillar seeking indemnity on the theory that Caterpillar defectively designed and assembled the hopper. The trial court's dismissal of the complaint for indemnity was affirmed upon review. The court stated:

> "To say that an unreasonably dangerous condition may include design defects does not mean that a party whose only connection to the product is that of the designer is liable under products liability theories. * * * Where a party merely designs a product for someone else, there is no sale or equivalent transaction between the parties which subjects the designer to liability as part of the distributive system." (80 Ill. App. 3d 262, 264, 399 N.E.2d 722, 723.)

The court went on to note that many parties may have a peripheral relationship to the distributive process, including a warehouse or a transportation company, but be outside the manufacturing-distributing system wherein strict liability is imposed for defective products.

The same result was reached in *Templeton*, where the manufacturer of a steel rolling machine was held to have no right to indemnification from the designer of the machine, Jones & Laughlin Steel Co., who was also the purchaser-user of the product.

Numerous other cases have also rejected an "active-passive" theory of indemnity, holding that a manufacturer or prior handler can have no cause of action for indemnity where the manufacturer is subject to a strict liability action and the indemnity action is based upon the alleged negligence of the subsequent user. (*E.g., Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 316 N.E.2d 516; *Vassolo v. Comet Industries, Inc.* (1975), 35 Ill. App. 3d 41, 341 N.E.2d 54; *Kossifos v. Louden Machinery Co.* (1974),

22 Ill. App. 3d 587, 317 N.E.2d 749; *Stanfield v. Medalist Industries, Inc.* (1974), 17 Ill. App. 3d 996, 309 N.E.2d 104.) See Note, *A Judicial Rule of Contribution Among Tortfeasors in Illinois*, 1978 Ill. L. Forum 633, 637-38.
■■ We believe the foregoing authorities are persuasive that neither GATX nor Phillips has an indemnity cause of action against N&W under the applicable law of Illinois. Accordingly, the indemnity cause should have been dismissed, and the judgment entered therein against N&W must be reversed.

■■ Next we consider N&W's assertion that the trial court erred in directing a verdict for Phillips and GATX upon N&W's product liability counterclaim. N&W analyzes the evidence in some detail, insisting that all the elements of a product liability action were established and that the trial court erred in ruling that a *prima facie* case was not proved. However, we need not consider the sufficiency of the evidence because we find that the trial court's ruling, which resulted in a judgment in favor of GATX and Phillips, was correct on the basis of the pleadings. As a matter of law, a railroad has no right to product-liability relief against the manufacturer of a railroad car on the basis of an unreasonably dangerous design where the design used met the standards of the Association of American Railroads (AAR) to which the plaintiff railroad belonged. (*St. Louis-San Francisco Ry. Co. v. Armco Steel Corp.* (8th Cir. 1974), 490 F.2d 367.) In other words, where the subsequent user of the allegedly defective railroad car is a railroad corporation which participated in the development of specifications for the construction of the railroad car, an action for product liability, brought by that railroad, will not be recognized against the manufacturer of the car.

In *Toledo, Peoria & Western R.R. v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 928, 385 N.E.2d 937, this court ruled that, as a matter of law, the plaintiff railroad had no product liability cause of action against the rebuilder of a hopper car equipped with solid bearings rather than roller bearings. In that case, a tank car loaded with LPG exploded when an undetected "hot box" developed in the solid bearing assembly of a hopper car which was a part of the same train. The opinion noted that the interchange of railroad cars involves a highly specialized use which is too dissimilar to the commercial distribution of a product to warrant application of the doctrine of strict liability. Accord, *Torres v. Southern Pacific Transportation Co.* (9th Cir. 1978), 584 F.2d 900.

The public policy underlying the doctrine of product liability has been stated as follows:

"The major purpose of strict liability is to place the loss caused by defective products of those who create the risk and reap the profit by placing a defective product in the stream of commerce, regardless of whether the defect resulted from the 'negligence' of the

manufacturer. We believe that this purpose is best accomplished by eliminating negligence as an element of any strict liability action, including indemnity actions in which the parties are all manufacturers or sellers of the product." *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82, 338 N.E.2d 857, 860.

Just as in the *Toledo* case, the use of solid bearings presented a risk of a hot box known and appreciated by a railroad handling the car in interchange, so, too, is the absence of a protective shield to prevent puncture of a tank car when a coupling operation goes awry. A railroad accepting such a tank car in interchange is chargeable with the same expertise and knowledge of the characteristics of tank car construction and of coupling operations as is the manufacturer of the car. Consequently, the public policy underlying product liability would not be served by recognizing the railroad's cause of action here.

We distinguish the case of *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534, where a railroad employee's representative brought suit against GATX in a product liability action based upon this same accident. In that case, the employee, Rucker, was clearly within the class of persons who are entitled to recover under a theory of strict liability which his employer, N&W, is not. Having determined that N&W is not entitled to bring an indemnity action against the manufacturer of the tank car, we must affirm the judgment in favor of GATX and Phillips entered upon the counterclaim of N&W.

N&W has also assigned as error numerous rulings on evidence, various jury instructions which were given, and the failure of proof of certain facts. However, since we have ruled that the complaints and the counterclaim failed to state causes of action, it would be meaningless to attempt to review trial rulings.

For the reasons stated, we reverse the judgments entered upon the complaints and affirm the judgment entered upon the counterclaim.

Reversed in part; affirmed in part.

SCOTT, P. J., and STOUDER, J., concur.