(Nos. 61799, 61834 cons.—

KENNETH DAVID ALLISON *et al.* v. SHELL OIL COMPANY *et al.*, Appellants (Strange & Coleman, Inc., Appellee).

*Opinion filed June 20, 1986.*

Allen D. Allred and Nicholas H. Ores, of Thompson & Mitchell, of Belleville, for appellant Shell Oil Company.

Robert D. Francis and Frederick P. Johnston, Jr., of Dunham, Boman and Leskera, of East St. Louis, for appellant J. J. Wuellner & Sons, Inc.

Robert W. Wilson and Laura B. Allen, of Evans & Dixon, of St. Louis, Missouri, for appellee.

JUSTICE SIMON delivered the opinion of the court:

This case presents for decision a question previously

left unanswered by this court in *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 454, and *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344: whether implied indemnity remains a viable theory for shifting the costs of tortious conduct among jointly liable tortfeasors following adoption of "An Act in relation to contribution among joint tortfeasors" (the Act) (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*). We note at the outset, however, that the claims for indemnification in this case are not premised upon an underlying action regarding a defective product or the would-be indemnitees' vicarious liability for the conduct of their indemnitor (see *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 97), and we express no opinion on the continued vitality of implied indemnity in those cases. Neither does our opinion in this case affect the validity of explicit undertakings among two or more parties to shift from one party to another the ultimate cost of liability which may arise in favor of a third party.

In August 1979, defendant and third-party plaintiff Shell Oil Company (Shell) contracted with third-party defendant Strange & Coleman, Inc. (Strange & Coleman), for the latter to rebuild a "catcracker" unit at Shell's Wood River refinery. Pursuant to the terms of their agreement, Strange & Coleman agreed to "furnish all labor, supervision, machinery, equipment, materials and supplies necessary" to rebuild the catcracker while taking responsibility "for all acts and omissions of its subcontractors."

One such subcontractor, defendant and third-party plaintiff J. J. Wuellner, Inc. (Wuellner), was engaged by Strange & Coleman to provide scaffolding from which Strange & Coleman employees could hot-weld the multistory-tall "cyclone" portion of the catcracker. However, the scaffolding erected by Wuellner left an area of the cyclone inaccessible to Strange & Coleman's boilermak-

ers who were performing the welding. Strange & Coleman's employees therefore ran a 2-foot by 12-foot board from the dust collector at the top of the cyclone to Wuellner's scaffold, from which board the employees could reach the cyclone. Evidence admitted at trial showed the board was not secured to either the cyclone or the scaffold, although there was wire available with which to make it fast.

Kenneth Allison, the plaintiff and a boilermaker for Strange & Coleman, was injured while working atop the board; the board slipped, and both the board and Allison fell. Allison brought suit against Shell and Wuellner, asserting negligence and liability under the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*). Defendants impleaded Strange & Coleman as a third-party defendant, seeking complete indemnification or, in the alternative, contribution. Prior to trial, Shell, Strange & Coleman and Wuellner entered into a settlement with Allison, and the third-party claims proceeded to trial in the circuit court of Madison County to determine what liability each defendant had for the settlement amount. The jury was instructed on both implied indemnity and contribution, and judgment was entered on the jury's finding that Shell and Wuellner were entitled to indemnification from Strange & Coleman. On Strange & Coleman's appeal, the appellate court reversed that judgment, reasoning that contribution had replaced "active-passive" indemnity in this State, and remanded the proceeding for a new trial (133 Ill. App. 3d 607). We allowed the third-party plaintiffs leave to appeal (94 Ill. 2d R. 315).

Implied indemnity has undergone a gradual metamorphosis. At common law, the doctrine evolved as a restitutionary device, a contract implied in law arising from the legal obligation of an indemnitee to satisfy liability caused by actions of his indemnitor. (F. Woodward, Quasi

Contracts sec. 259 (1913); *cf.* 2 W. Blackstone *443 (if one party undertakes to perform business for another party and fails to, by a contract implied in law the one party "shall pay the other party such damages as he has sustained by such *** neglect").) If, for example, an injured party could hold an employer or property owner vicariously liable for the negligence of an employee or other person, a right of indemnity would be implied in favor of the party liable in law who had not contributed to the injury. (*Pfau v. Williamson* (1872), 63 Ill. 16; *Scott v. Curtis* (1909), 195 N.Y. 424, 88 N.E. 794; see *Van Slambrouk v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469-70.) Thus, in order to establish a *quasi*-contractual right of indemnification, the supposed indemnitee would have to show that his liability was merely technical—that he had not acted wrongfully in any degree—and that it arose solely from a pretort relationship by which the supposed indemnitor impliedly promised to indemnify. See *Nelson v. Cook* (1856), 17 Ill. 443.

With the growth of tort liability for negligent acts, the doctrine of implied indemnity was extended in response to the rule in *Merryweather v. Nixan* (K.B. 1799), 101 Eng. Rep. 1337, 8 Term R. 186, which prohibited contribution among jointly negligent tortfeasors (*e.g., Consolidated Ice Machine Co. v. Keifer* (1890), 134 Ill. 481). The rule against contribution, harsh enough in cases where both tortfeasors were *in pari delicto,* was even harsher where the difference in relative degrees of fault was so great that the negligence of one tortfeasor could be labeled "primary" in relation to the "secondary" negligence of the other. (See generally *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 291-92.) This court first indicated the possibility of relief for the less negligent party in *John Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 338-39 (upholding an express contract for indemnity):

"Where one [of two persons] is only passively negligent but is exposed to liability through the positive acts and actual negligence of the other, the parties are not in equal fault as to each other though both are equally liable to the injured person. *** [T]he ultimate loss may be visited upon the principal wrongdoer, who is made to respond for all the damages, where one less culpable, although legally liable to third persons, may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done."

Relying upon that *dictum* in the *Griffiths* case and adopting the doctrine of "active-passive negligence," our appellate court recognized a right of "equitable" implied indemnity based upon the relative fault of the parties (see generally *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 11) where the relationship between legally liable parties did not impose vicarious liability upon the indemnitee or imply a promise to indemnify by the indemnitor (*Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.* (1951), 343 Ill. App. 148). The movement of implied indemnity off its *quasi*-contractual foundation was completed in *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, and *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187. Recognizing that "[a]t common law the cases in which indemnity was allowed involved a defendant held liable without personal fault" (*Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 197), our appellate court nonetheless expanded the doctrine of indemnity by allowing indemnity in the absence of merely derivative liability or any pretort relationship. It reasoned that "degrees of fault must be recognized which will permit indemnification from tortfeasors substantially at fault to those less blameworthy." 86 Ill. App. 2d 187, 198; see *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, 336-37; but see *Young v. Gateway Transportation Co.*

(1975), 26 Ill. App. 3d 864 (indemnity denied).

This court, too, had previously indicated that less delinquent parties could transfer the full cost of their liability to those more delinquent even where there existed no prior relationship supporting a *quasi*-contractual duty to indemnify. (*Miller v. DeWitt-Amdal & Associates* (1967), 37 Ill. 2d 273; see *Carver v. Grossman* (1973), 55 Ill. 2d 507 (indemnity not allowed because negligence of both tortfeasors was "active"); *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 89 (indemnity "should be capable of development to meet perceived requirements for just solutions in questions involving multiple tortfeasors").) In *Skinner*, though, we observed that indemnity implied by an active-passive distinction, like the no-contribution rule itself, was inequitable. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 12.) Although active-passive indemnity has been used "to mitigate the harsh effects that could result from an inflexible application of this judicially created bar to contribution" (*Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 230; Gustman and Schreiber, *Active-Passive Implied Indemnity: The Current Status of this Obsolete Doctrine*, 74 Ill. B.J. 252, 258 (1986)), the doctrine does not mete out complete justice since, by definition, it shifts all costs of liability to only one of two or more parties actually at fault (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 12; *Study Committee Report on Indemnity*, 1976 Report of the Illinois Judicial Conference 198, 216). Active-passive indemnity simply does not comport with the governing principle in this jurisdiction that the costs of accidental injury are to be apportioned in accordance with the relative fault of all concerned in the action. See *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 28.

Acknowledging that following *Skinner* and the Act "there is 'no further need for this "creative extension" of indemnity' " employed by *Sargent* and *Miller* (*Van*

*Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 613, *quoting*, Appel and Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative and Judicial Cooperation,* 10 Loy. U. Chi. L.J. 169, 192 (1979)), Shell and Wuellner nonetheless contend that active-passive indemnity remains a viable alternative to contribution where there exists a pretort relationship and a "quantitative" difference in the fault attributable to tortfeasors. We disagree.

Neither our decision in *Skinner* nor the language of the Act expressly answers whether contribution and active-passive indemnity can coexist. (Compare *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, with *Thomas v. Malco Refineries, Inc.* (10th Cir. 1954), 214 F.2d 884.) But the answer to this appeal and the future of active-passive indemnity is found in this court's opinion in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, wherein this court adopted pure comparative negligence and abolished contributory negligence. Active-passive indemnity is a doctrine cleated to the law of contributory negligence and last clear chance, and *Alvis* cast the doctrine free of its theoretical mooring. As predicted nearly 20 years ago by the appellate court:

> "Properly applied, we feel that this rule [of comparative negligence] will eliminate the need for continued adherence to the fictions of 'active-passive' or 'primary-secondary' negligence, for actions for contribution or indemnification will fall under the same rule as original actions for the recovery of damage." *Maki v. Frelk* (1967), 85 Ill. App. 2d 439, 451.

The boundaries of active and passive negligence are delineated by the doctrines of contributory negligence and last clear chance. (Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U. Pa. L. Rev. 130, 154 (1932); see *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 603.) Whereas

traditional implied indemnity in the case of vicarious liability is an action in *quasi*-contract, actions for active-passive indemnity wear the countenance of tort claims. As earlier noted by the appellate court, active-passive "indemnity may be obtained on tort principles." (*Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, 337.) To prove a right of indemnification the would-be indemnitee had to establish that his conduct—as between himself and his indemnitor—was not contributorily negligent, and if it was, that the indemnitor had the last clear chance to avoid injury. *Nashua Iron & Steel Co. v. Worcester & Nashua R.R. Co.* (1882), 62 N.H. 159, 160 (where defendant frightened plaintiff's horses so that injury was caused to third party, plaintiff could recover damages paid to third party if plaintiff could have recovered for damages to its horses).

Analyzed without regard to the title of the action and nature of damages, suits for active-passive indemnity are in reality actions for ordinary negligence to recover damages from the indemnitor; an indemnitee's conduct is considered "passive" if the indemnitee was not contributorily negligent (*Moroni v. Instrusion-Prepakt, Inc.* (1960), 24 Ill. App. 2d 534 (property owner liable under the Structural Work Act indemnified by contractor—failure to inspect and make safe is not contributory negligence as against contractor on whom landowner has a right to rely (*Beidler v. King* (1904), 209 Ill. 302, 312; 57 Am. Jur. 2d *Negligence*, sec. 334 (1971))); see *Busch & Latta Paint Co. v. Woermann Construction Co.* (1925), 310 Mo. 419, 439-40, 276 S.W. 614, 620; see also *Boston Woven-Hose & Rubber Co. v. Kendall* (1901), 178 Mass. 232, 59 N.E. 657; *cf. Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 219 (indemnity denied where defendant eschewed relationship with third-party defendant who created dangerous condition defendant did not correct)) or if the indemnitor squandered the last clear chance (*Garfield Park Community*

*Hospital v. Vitacco* (1975), 27 Ill. App. 3d 741; *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187; *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334; see *Carver v. Grossman* (1973), 55 Ill. 2d 507, and *Gillette v. Todd* (1969), 106 Ill. App. 2d 287 (indemnity denied where parties seeking indemnity had last clear chance)). But see Bua, *Third Party Practice in Illinois: Express and Implied Indemnity,* 25 De Paul L. Rev. 287, 314 (1976) ("All attempted definitions of active-passive negligence break down in application").

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 27, the court determined that total justice can only be attained where the law "apportions damages according to the relative fault of the parties." Active-passive indemnity, like contributory negligence, perpetuates inequality by its inability to apportion loss and its refusal to grant any relief whatsoever to a party whose conduct is considered "active" regardless of how much or little other tortfeasors are at fault. (See *Gillette v. Todd* (1969), 106 Ill. App. 2d 287.) Because active-passive indemnity is contributory negligence and last clear chance incarnate, it perpetuates a theory of fault repudiated in *Alvis*: that one party was ultimately responsible for any injury, and that courts were charged with employing legal doctrine in a game of pin the tail on the donkey. *Alvis* concludes "that the doctrine of 'last clear chance' was created to escape the harshness of the contributory negligence rule. As the need for it disappears *** the vestiges of the doctrine of 'last clear chance' are hereby abolished." (85 Ill. 2d 1, 28.) Having adopted comparative negligence and the principles of apportioning rather than affixing liability, not only in *Alvis,* but also in *Skinner* and by the Contribution Act, the need for implied indemnity based upon an active-passive distinction has also evaporated.

Because plaintiff's complaint in this case sought recovery for Shell's and Wuellner's alleged violations of the

Structural Work Act and other alleged acts or omissions constituting negligence, we reiterate that this case does not present a claim for implied indemnity arising from third-party plaintiffs' solely vicarious liability, and we do not here decide whether a tortfeasor whose liability is vicariously imposed by policy of law rather than culpability of conduct may shift the whole of its liability to those parties actually and solely at fault. (See *Jethroe v. Koehring Co.* (S.D. Ill. 1985), 603 F. Supp. 1200, 1203-04.) Under the Structural Work Act, liability would be imposed on plaintiff's complaint only if Shell or Wuellner were actually at fault; the Act does not contemplate strict liability. *Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 537; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 319; see *Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 449.

Active-passive indemnity is no longer a viable doctrine for shifting the entire cost of tortious conduct from one tortfeasor to another. For this reason, the jury should not have been instructed on the law of active-passive indemnity. Shell and Wuellner have expressed concern that regardless of facts presented, a jury will always impose some percentage of responsibility on a party seeking contribution on the mistaken belief that since that party was found liable to the original claimant, it must bear responsibility to some degree. Such concerns are best voiced to the trial judge, who may, in his discretion and if the evidence warrants, instruct the jury on the full range of its options under the Act (see, *e.g., Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 18). The judgment of the appellate court is affirmed, and this cause is remanded to the circuit court of Madison County for further proceedings consistent with this opinion.

*Affirmed and remanded.*