**Gerardo DE ANDA, Plaintiff,**

v.

**MIDLAND–ROSS CORPORATION, etc., Defendant.**

**MIDLAND–ROSS CORPORATION, etc., Third-party plaintiff,**

v.

**BORSE PLASTIC PRODUCTS CORP., etc., Third-party defendant.**

**No. 85 C 3819.**

United States District Court, N.D. Illinois, E.D.

Sept. 22, 1986.

Michael Dockterman, Cal R. Burnton, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-third party plaintiff Midland-Ross Corp.

Thomas P. Burke, Carmel Cosgrave, Eric Samore, Querrey, Harrow, Gulanick, & Kennedy, Chicago, Ill., for third party defendant Borse Plastics Corp.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Third-party defendant Borse Plastic Products Corp. moves to dismiss the complaint of defendant/third-party plaintiff Midland-Ross Corp. against it for contribution or indemnity. The underlying action

arose apparently in April 1983 when Gerardo DeAnda, an employee of Borse, was allegedly injured on the job while working on a plastic mold press machine manufactured by Midland-Ross.

Barred from suing his employer by the Illinois Workmen's Compensation Act, Ill. Rev.Stat. ch. 48 ¶ 138.1 *et seq.*, DeAnda seeks to recover from Midland-Ross on a strict liability theory. He alleges that the press was defective and unreasonably dangerous because operators had to go under the machine to make "a continuous injection head adjustment" and both the safety gates and the warnings to operators were inadequate to prevent injury. Midland-Ross both defends against DeAnda's suit with, and rests its third-party complaint against Borse on, allegations that Borse carelessly and negligently failed to install the proper safety gates and failed to properly train and warn its employees.

What concerns us at the moment is that Midland-Ross has alleged three counts against Borse: one purportedly for contribution under Ill.Rev.Stat. ch. 70 ¶ 301 *et seq.*, an "Act in Relation to Contribution Among Joint Tortfeasors" (Contribution Act); another for "implied contractual indemnity;" and a third simply labeled "indemnity" which attempts to rest on a distinction between alleged active negligence by Borse and Midland-Ross' own passive conduct. Borse moves to dismiss all three counts, contending that an "implied contractual indemnity" and "indemnity" are the same thing, that the Contribution Act and recent Illinois decisions have extinguished any common law indemnity which would have applied in this case, and that the remaining count fails to state a claim under the Contribution Act because it does not allege that Borse either misused the press or assumed the risk of its use.

This court initially deferred consideration of the motion in the hope that the Illinois Supreme Court's expected decision in *Allison v. Shell Oil Company*, Nos. 61799 and 61834, would decide the matter. *DeAnda v. Midland-Ross Corp.*, No. 85 C 3819, minute order (N.D.Ill. June 12, 1986). That case has now been decided. *Allison v. Shell Oil Co.*, 113 Ill.2d 26, 495 N.E.2d 496, 99 Ill.Dec. 115 (1986). While it does not control the result here as squarely as we had hoped, the opinion has cleared up enough of the confusion surrounding indemnity and contribution that this court can rule with more confidence. The complaint is dismissed, but with leave to amend the contribution count.

### Discussion

#### 1. *"Downstream" Indemnity for a Products Liability Defendant*

■ The status of indemnity in Illinois has been a puzzle since the judicial recognition of contribution among tortfeasors in *Skinner v. Reed-Prentice Division, Package Machinery Co.*, 70 Ill.2d 1, 374 N.E.2d 437, 15 Ill.Dec. 829 (1977), *cert. denied*, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978), and the codification of that decision in the Contribution Act. *See, e.g., Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F.Supp. 919, 931 (N.D.Ill. 1986); Gustman & Schreiber, *Active-Passive Implied Indemnity: The Current Status of this Obsolete Doctrine*, 74 Ill.Bar J. 252 (1985–86). Indemnity took shape historically as a means of mitigating the harshest effects of the rule prohibiting contribution among tortfeasors. The no-contribution rule left one defendant bearing the entire cost of a judgment regardless of the degree to which other defendants also were at fault. Courts came to avoid the worst effects of the rule by implying in law a contract to indemnify when the conduct of one party left the other at risk of tort liability. An action for indemnity would lie when the party seeking indemnity could show (1) a pre-tort relationship from which a contract to indemnify could reasonably be implied and (2) conduct which was at most passive negligence, as compared to the active negligence, or worse, of the party from which indemnity was sought. *Id.* at 252–253; *Van Slambrouck v. Economy Baler Co.*, 105 Ill.2d 462, 475 N.E.2d 867, 86 Ill.Dec. 488 (1985). Indemnity, however, was not without its own unfairness. The

doctrine provided for shifting all of the liability or none, but nothing in between, so that a party could still be saddled with a judgment disproportionate to its fault. Gustman & Schreiber, *supra,* at 253; *Holmes v. Sahara Coal Co.,* 131 Ill.App.3d 666, 475 N.E.2d 1383, 86 Ill.Dec. 816 (5th Dist.1985).

After *Skinner* and the Contribution Act eliminated the principal reason for indemnity, namely the no-contribution rule, a number of commentators assumed that implied indemnity's days were numbered. See *Holmes,* 131 Ill.App.3d at 675, 475 N.E.2d at 1389, 86 Ill.Dec. at 822. The Illinois Supreme Court in *Allison* largely, but not entirely, fulfilled their expectations holding that implied indemnity "is no longer a viable doctrine" in Illinois. 113 Ill.2d at 35, 495 N.E.2d at 501, 99 Ill.Dec. at 120. The stumbling block for the problem before us, however, is that *Allison* was not a products liability case. The *Allison* court pointedly declined to express an opinion on the status of implied indemnity when the claim was "premised upon an underlying action regarding a defective product." 113 Ill.2d at 27, 495 N.E.2d at 497, 99 Ill.Dec. at 116. The exception, however, probably does not include the case at bar, because this indemnity claim runs "downstream."

Indemnity claims stemming from products liability actions can be divided into "upstream" and "downstream" claims. "Upstream" indemnity refers to shifting liability to a manufacturer or previous user of the product, while indemnity "downstream" is a shift to a subsequent user or handler. *See Phillips Petroleum Co. v. Norfolk & Western Railway,* 96 Ill.App.3d 1093, 1097, 422 N.E.2d 138, 141, 52 Ill.Dec. 457, 460 (4th Dist.1981). Classic "upstream" claims would be those of a dealer held strictly liable who sought to recover all his liability from the manufacturer of the product, or an assembler who sought to lay the blame on the producer of a component part. *See, e.g., Maxfield v. Simmons,* 96 Ill.2d 81, 449 N.E.2d 110, 70 Ill.Dec. 236 (1983); *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.,* 62 Ill.2d 77, 338 N.E.2d 857 (1975). "Downstream" is,

of course, the reverse, *e.g.,* a manufacturer shifting liability to a dealer or subsequent user. *Phillips,* 96 Ill.App.3d at 1097, 422 N.E.2d at 141, 52 Ill.Dec. at 460.

Because strict liability is based in part on the policy goal of distributing the economic burden of injuries to the party who has profited the most from the product and therefore can best bear the burden, shifting all the liability "upstream" through indemnity has generally been more favored than efforts to shift it all "downstream". *Lowe v. Norfolk & Western Railway,* 124 Ill.App.3d 80, 97, 463 N.E.2d 792, 805, 79 Ill.Dec. 238, 251 (5th Dist.1984). *Cf.* Ill. Rev.Stat. ch. 110 ¶ 2–621 (defendant other than manufacturer of product may be dismissed from strict liability action on certifying identity of manufacturer). Several of the pre-*Allison* Illinois Appellate Court decisions which held that the Contribution Act extinguished indemnity expressly made exceptions for the "upstream" claim arising from strict liability, fearing, for example, that otherwise a manufacturer could escape the liability the law would ordinarily impose through a quick settlement offer. *See Lowe,* 124 Ill.App.3d at 98, 463 N.E.2d at 806, 79 Ill.Dec. at 252; *U.S. Home v. George W. Kennedy Construction Co.,* 617 F.Supp. 893 (N.D.Ill.1985), *modified,* 624 F.Supp. 528 (N.D.Ill.1986); *Galliher v. Holloway,* 130 Ill.App.3d 628, 474 N.E.2d 797, 85 Ill.Dec. 837 (5th Dist.1985); *Morizzo v. Laverdure,* 127 Ill.App.3d 767, 469 N.E.2d 653, 83 Ill.Dec. 46 (1st Dist.1984).

Though the *Allison* court did not use the phrase "upstream" when it discussed why it was not deciding the survival of indemnity in a strict liability situation, 113 Ill.2d at 35, 495 N.E.2d at 501, 99 Ill.Dec. at 120, it cited *Jethroe v. Koehring Co.,* 603 F.Supp. 1200, 1204 (S.D.Ill.1985), which did. We strongly suspect that the *Allison* court had only "upstream" indemnity in mind. The instant case, of course, involves a "downstream" indemnity claim, a manufacturer seeking to shift all its potential liability to a buyer and user of its product. We think it falls within the vast majority of indemnity claims which *Allison* intended to eliminate.

Our reading of *Allison* is supported by other cases which indicate that indemnity does not lie "downstream" from a strict liability action. In *Robinson v. International Harvester Co.*, 70 Ill.2d 47, 374 N.E.2d 458, 15 Ill.Dec. 850 (1977), a case decided concurrently with *Skinner*, an employee injured while operating an industrial truck had sued the manufacturer of the truck on a strict liability theory. The manufacturer brought a third-party complaint for indemnity against the employer. The Supreme Court reversed the trial court's dismissal of the third-party claim, but only after recharacterizing the action as one for contribution rather than indemnity. 70 Ill.2d at 50, 374 N.E.2d at 459, 15 Ill.Dec. at 851. *Accord: Stevens v. Silver Manufacturing Co.*, 70 Ill.2d 41, 46, 374 N.E.2d 455, 457, 15 Ill.Dec. 847, 849 (1977). The court in *Heinrich v. Peabody International Corp.*, 139 Ill.App.3d 289, 295, 486 N.E.2d 1379, 1384, 93 Ill.Dec. 544, 549 (1st Dist. 1985), read these cases as at least expressing a preference for contribution over indemnity in the "downstream" situation.

Further, in *Van Slambrouck* the Illinois Supreme Court rejected the claim of the manufacturer of a paper baling machine for indemnity from the firm which owned the machine at the time a worker was injured. The court technically did not reach the question of whether a manufacturer could bring an indemnity action against a subsequent user, because it found instead that the complaint did not allege one of the basic elements of indemnity: a pre-tort relationship which could give rise to a duty to indemnify. 105 Ill.2d at 469–470, 475 N.E.2d at 870, 86 Ill.Dec. at 491. However, since the complaint did allege a manufacturer/purchaser relationship, and the Supreme Court in *Maxfield*, 96 Ill.2d at 86, 449 N.E.2d at 112, 70 Ill. Dec. 238, had expressly found a buyer/seller relationship to be the kind on which "upstream" indemnity could be based, the opinion strongly suggests that a manufacturer/purchaser relationship will never support indemnity "downstream." *See Van Slambrouck*, 105 Ill.2d at 471–473,

475 N.E.2d at 871–872, 86 Ill.Dec. at 492–493 (Simon, J. dissenting).

In short, the weight of authority indicates that Midland-Ross's counts for "implied contractual indemnity" and active/passive indemnity are not well grounded in Illinois law. Borse is of course correct in pointing out that the two counts do not represent two different legal theories of recovery. Rather, each supplies half of the elements of an indemnity action. One deals with the relationship from which a contract to indemnify purportedly could be implied, the other with the necessary distinction between the parties' conduct. *Cf. Van Slambrouck*, 105 Ill.2d at 469, 475 N.E.2d at 870, 86 Ill.Dec. at 491. Taking them as comprising one claim for indemnity, that action will no longer lie after the Contribution Act. *Allison*, especially when read in light of *Robinson*, *Stevens* and *Van Slambrouck*, indicates that a defendant in a strict liability action may not seek indemnity "downstream".

## 2. Elements of a Claim for Contribution from an Underlying Strict Liability Claim

■ The action which does lie "downstream", at least for causes arising after March 1st, 1978, is an action for contribution. *Skinner*, 70 Ill.2d at 15–16, 374 N.E.2d at 443, 15 Ill.Dec. at 835; *Stevens*, 70 Ill.2d at 45, 374 N.E.2d at 457, 15 Ill. Dec. at 849; *Robinson*, 70 Ill.2d at 50, 374 N.E.2d at 459, 15 Ill.Dec. at 851. *See also Heinrich*, 139 Ill.App.3d at 302, 486 N.E.2d at 1388, 93 Ill.Dec. at 553. Borse, however, contends that even Count I of Midland-Ross' complaint falls short. To have a claim for contribution arising from a strict liability action, says Borse, one must allege misuse of the product or assumption of risk.

This court agrees. Perhaps, as Midland-Ross argues, no Illinois decision has precisely spelled out such a limitation on a strictly liable defendant's claim for contribution. Nevertheless it follows from the logic of other decisions. Contribution apportions liability according to the relative

fault of the parties. Ill.Rev.Stat. ch. 70 ¶ 303; *Doyle v. Rhodes,* 101 Ill.2d 1, 17, 461 N.E.2d 382, 386, 77 Ill.Dec. 759, 763 (1984). There is tension between any system which allocates liability according to fault and the law of strict liability, since the latter imposes liability on the manufacturer of a defective product as a matter of public policy whether the manufacturer has been negligent or not. *See Coney v. J.L.G. Industries, Inc.,* 97 Ill.2d 104, 114–115, 454 N.E.2d 197, 201, 73 Ill.Dec. 337, 341 (1983). In *Coney,* the Illinois Supreme Court resolved that tension by striking a balance between the policies. It concluded that a manufacturer should be able to reduce the amount of damages strictly imposed on it by law only to the extent that another party's conduct proximately caused the plaintiff's injuries. 97 Ill.2d at 117, 454 N.E.2d at 203, 73 Ill.Dec. at 343.

The question before the *Coney* court was whether the principles of comparative negligence, which allocates liability between a plaintiff and a defendant according to the comparative fault of each, *see Alvis v. Ribar,* 85 Ill.2d 1, 27, 421 N.E.2d 886, 898, 52 Ill.Dec. 23, 35 (1981), apply to a strict liability action. The court held that they do. *Coney,* 97 Ill.2d at 117, 454 N.E.2d at 203, 73 Ill.Dec. at 343. However, the court also held that a proper respect for the principles of strict liability means that mere carelessness on the plaintiff's part should not reduce his award. As the *Coney* court put it:

> A consumer's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor ... [t]he consumer or user is entitled to believe that the product will do the job for which it was built.

97 Ill.2d at 119, 454 N.E.2d at 204, 73 Ill.Dec. at 344 (citation omitted.) Only affirmative conduct like misuse or assumption of risk could justify shifting a portion of the loss back on to the consumer. *Id. See also Simpson v. General Motors Corp.,* 108 Ill.2d 146, 483 N.E.2d 1, 90 Ill.Dec. 854 (1985) (evidence of plaintiff's contributory negligence not admissible in products liability case).

*Coney* dealt with comparative fault between a plaintiff and a defendant, but its reasoning applies equally to a manufacturer's efforts to deflect part or all of its strict liability to a third party through contribution. First, as the *Allison* court noted, the action for contribution (as opposed to indemnity) rests on precisely the same theory and policy as comparative negligence, namely the desire to allocate liability according to comparative fault. Indeed, the *Allison* court rested its rejection of implied indemnity in large part on the difficulty of reconciling indemnity doctrines with *Alvis,* the decision which adopted pure comparative negligence for Illinois. *Allison,* 113 Ill.2d at 34, 495 N.E.2d at 501, 99 Ill.Dec. at 120.

If under comparative fault principles conduct by a plaintiff would not rise to a level which allowed a manufacturer to escape liability, then it follows that the identical conduct by a third party should not allow a manufacturer to escape liability either. Under *Coney,* when a third party was merely careless or negligent, a strictly liable manufacturer has no claim to contribution. *Cf. Pell v. Victor J. Andrew High School,* 123 Ill.App.3d 423, 462 N.E.2d 858, 78 Ill.Dec. 739 (1st Dist.1984) (school's carelessness in assembling trampoline so warnings were not visible not a damage-reducing factor in injured pupil's strict liability suit against manufacturer).

Secondly, the Contribution Act was a legislative codification of the Illinois Supreme Court's decision in *Skinner,* and *Skinner* analyzed the question of what conduct gives rise to a strict liability defendant's claim for contribution in exactly the same way that *Coney* analyzed the question of comparative fault between plaintiff and strict liability defendant. *See Doyle,* 101 Ill.2d at 16, 461 N.E.2d at 389, 77 Ill.Dec. at 766. Like *Coney,* the *Skinner* opinion speaks of a manufacturer reducing its liability only when the third party's conduct amounted to a proximate cause of the plaintiff's injuries. 70 Ill.2d at 14, 374 N.E.2d at 442, 15 Ill.Dec. at 834. Indeed,

the *Coney* court's analysis expressly relied on precisely that portion of *Skinner.* *See Coney,* 97 Ill.2d at 117, 454 N.E.2d at 203, 73 Ill.Dec. at 343. As to what conduct rises to that level, the *Skinner* court said:

> If the manufacturer's third-party complaint alleges that the employer's misuse of the product or assumption of the risk of its use contributed to cause plaintiff's injuries, the manufacturer has stated a cause of action for contribution.

70 Ill.2d at 15, 374 N.E.2d at 443, 15 Ill. Dec. at 835. *Cf. Stevens,* 70 Ill.2d at 45, 374 N.E.2d at 457, 15 Ill.Dec. at 849; *Robinson,* 70 Ill.2d at 50, 374 N.E.2d at 459, 15 Ill.Dec. at 851 (finding that such allegations by strictly liable manufacturers state claims for contribution). We conclude that in Illinois only a showing of affirmative misuse or assumption of risk gives a strictly liable manufacturer a right to contribution.

■ Here, however, Midland-Ross appears to have alleged no more than carelessness on Borse's part toward any defect. The complaint states, for example, that Borse "carelessly and negligently failed to have adequate safety gates" and "carelessly and negligently failed to train its employees ... in ... the danger of crawling under the machine." Midland-Ross does not, however, allege facts which could be characterized as misuse or assumption of risk. For example, it does not claim that Borse knew that the safety gates were inadequate, knew that better safety gates were available, or knew that crawling under the machine would be dangerous. *Cf. Robinson,* 70 Ill.2d at 49, 374 N.E.2d at 459, 15 Ill.Dec. at 851 (allegation that employer knew that safety devices could be bought as optional equipment.)[1] By the usual principles of strict liability, without such knowledge Borse was entitled to think

that the press was safe as built. The facts as alleged thus do not state a claim for contribution.

This court nevertheless would prefer to see the question of Borse's possible contributing liability decided on the merits rather than on pleading deficiencies. *Cf. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 223 (1962). Given the confusion which has surrounded indemnity and contribution in Illinois law, we could well understand uncertainty about what to plead. Midland-Ross maintains in its brief that it will be able to show through discovery that Borse actually physically altered the press. Such affirmative conduct could, of course, give rise to misuse of the product or assumption of risk. We need, however, to see some inkling of this factual base in the complaint. Count 1 is dismissed, but Midland-Ross has leave to file an amended complaint with the facts that could lead to contribution.

### Conclusion

Counts 2 and 3 of defendant/third-party plaintiff's third-party complaint are dismissed. Count 1 is also dismissed, but with leave to amend within 30 days.

■

---

1. Midland-Ross argues in its reply brief that since the *Robinson* court recharacterized a complaint with allegations of negligence into a claim for contribution, this court can similarly recharacterize its complaint. We think, however, that Midland-Ross is misreading *Robinson.* The manufacturer there pled not only negligence but wilful and wanton conduct and, crucially, had alleged facts which supported misuse and assumption of risk. 70 Ill.2d at 49–50, 374 N.E.2d at 459, 15 Ill.Dec. at 851. Midland-Ross has not. The result *does not change* because Midland-Ross is in federal rather than state court. Under the Federal Rules, the legal theory used in the complaint does not define the scope of the claim, but the facts do. *See, e.g., Original Ballet Russe v. Ballet Theatre, Inc.,* 133 F.2d 187, 189 (2d Cir.1943).