CATHERINE ASHLEY, Adm'r of the Estate of Sonya Ann Curtis, Deceased, Plaintiff, v. EVANGELICAL HOSPITALS CORPORATION, d/b/a Woodlawn Hospital *et al.*, Defendants (Evangelical Hospitals Corporation, d/b/a Woodlawn Hospital, Third-Party Plaintiff-Appellee; Fernando Caburnay *et al.*, Third-Party Defendants-Appellants).

First District (2nd Division)   Nos. 1—90—3432, 1—90—3556 cons.

Opinion filed May 26, 1992.

Lord, Bissell & Brook, of Chicago (Robert B. Austin, Hugh C. Griffin, and Diane I. Jennings, of counsel), for appellant Fernando Caburnay.

Brydges, Riseborough, Morris, Franke & Miller, of Chicago (George E. Riseborough and Leslie A. Peterson, of counsel), for appellant David Kintanar.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe, Lynn D. Dowd, and Dale A. Diamond, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

We permitted these consolidated appeals to be taken from the interlocutory orders of the circuit court (134 Ill. 2d R. 308) which denied Dr. Fernando Caburnay's motion for summary judgment and Dr. David Kintanar's motion to dismiss a third-party indemnity action filed against both doctors by Woodlawn Hospital (Woodlawn) in connection with an underlying medical malpractice case filed against Woodlawn by plaintiff. With respect to the action brought against Dr. Caburnay, the circuit court certified the following question for our consideration:

> "Is the Third-Party Action for Implied Indemnity filed by Third-Party Plaintiff Woodlawn Hospital against Third-Party Defendants in February, 1987, to recover any damages Woodlawn might be obligated to pay as the purported principal or employer of Dr. Caburnay in the underlying medical malpractice action barred by the four-year repose period of section 13—212 where the medical care at issue was rendered on or before December 5, 1977?"

In the case against Dr. Kintanar, the circuit court certified the following issue:

"Whether a third party action for indemnity brought against a physician is subject to the repose period set forth in *Ill. Rev. Stat.*, ch. 110, par. 13—212 [*sic*], and accordingly barred, when the medical care at issue in the underlying action was rendered more than nine years prior to the filing of the Third-Party Complaint for indemnity."

On December 5, 1977, Sonya Ann Curtis died while undergoing surgery at Woodlawn. In 1978, the administrator of Curtis' estate, Catherine Ashley, filed a wrongful death action against Dr. Caburnay and two other doctors, predicated on medical malpractice, and against Woodlawn, based on vicarious liability. Specifically, Ashley alleged that Dr. Caburnay, an anesthesiologist, negligently inserted an endotracheal tube into Curtis' esophagus instead of her trachea, thereby causing her death. She further alleged that Woodlawn, through its agents, was responsible for regulating and supervising the anesthesia services rendered by Dr. Caburnay to its patients, and that its failure to meet its duty of care with respect to Curtis caused her death. In 1981, Dr. Caburnay and the other doctors settled with the plaintiff; Woodlawn did not settle with her until February 1987. Upon settling with plaintiff, Woodlawn also filed a third-party action against Dr. Caburnay, based on implied indemnity, and against Dr. Kintanar, who was not named in the plaintiff's underlying medical malpractice suit, based on his express contract of indemnity with Woodlawn.[1]

The medical malpractice period of repose, in effect at the time the alleged negligence occurred, provides in part:

"No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date as occurs first, but in no event shall such action be brought more

---

[1]Although it appears that Woodlawn may also have asserted a count for active-passive negligence against Dr. Kintanar, it states in its appellate brief that "[u]nlike with Dr. Caburnay, the Hospital's theory of liability against Dr. Kintanar was for express contractual indemnity." Because Woodlawn does not argue the issue of implied indemnity with respect to Dr. Kintanar, we do not consider it as to him. (134 Ill. 2d R. 341(e)(7).) In any event, the same analysis of that issue would of course apply to either doctor.

than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death ***." (Ill. Rev. Stat. 1977, ch. 83, par. 22.1.)

The original five-year period of repose, enacted in 1975, was shortened to four years in 1976. (*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 427.) "The four-year repose provision has been a part of the statute since that time[ ]" (*Mega*, 111 Ill. 2d at 427), and is now contained in section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—212).

Despite the harsh result imposed by the strictures of the statute of repose, the legislature and the supreme court have left no doubt as to how it is to be interpreted, for it was intended by the General Assembly to cut off liability regardless of the time of its accrual, and that design has been upheld by the Illinois Supreme Court. See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, *appeal dismissed sub nom. Woodward v. Burnham City Hospital* (1980), 449 U.S. 807, 66 L. Ed. 2d 11, 101 S. Ct. 54.

IMPLIED INDEMNITY

*Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, holds that the four-year medical malpractice period of repose applies to third-party claims for contribution. (See also *Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477; *Vogt v. Corbett* (1990), 138 Ill. 2d 482.) The parties here disagree, however, as to whether the holding in *Hayes* extends to third-party actions for implied indemnity as well. We hold that the reasoning employed by our supreme court in *Hayes* supports the inclusion of a third-party action for implied indemnity within the scope of the period of repose for medical malpractice cases. See also *Roberson v. Belleville Anesthesia Associates, Ltd.* (1991), 213 Ill. App. 3d 47, 51, *appeal denied* (1991), 141 Ill. 2d 559 (in which the fifth district held that the rationale employed in *Hayes* embraces actions for implied indemnity as well as for contribution, because the basis of the indemnitor's obligation rested on his liability in tort to the injured party); *Pederson v. West* (1990), 205 Ill. App. 3d 200 (where the court held, on the authority of *Hayes*, that the medical malpractice period of repose applied to actions for equitable apportionment).

Woodlawn asserts, on the basis of the holding in *Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, that the five-year statute of limitations in section 13—205 (Ill. Rev. Stat. 1989, ch. 110, par. 13—205) for "actions on unwritten contracts, expressed or implied, *** and all civil actions not otherwise provided

for," rather than the medical malpractice statute of repose, applies to actions for implied indemnity based on an underlying medical malpractice claim. Because an action for implied indemnity is a distinct cause of action, argues Woodlawn, it is not subject to the statute of limitations that pertains to the underlying claim. The five-year period in section 13—205, Woodlawn continues, recognizes that it may take years to ascertain which party is actively negligent before the passively negligent party can effectuate a settlement or is subjected to an adverse judgment, and it therefore provides a third-party plaintiff with sufficient time to perfect its indemnity action after its liability has been determined.

In *Anixter*, after the plaintiff sued the defendant for having been sold defective brass tubing, the defendant brought a third-party action for indemnity against the company which had supplied it with the tubing. "Although the relationship between [the parties] may have arisen as the result of a contract," the court ruled that the limitations period for a claim based on an implied contract of indemnity is governed by the general five-year statute of limitations in section 13—205, rather than by the Uniform Commercial Code, because "an implied contract of indemnity action is not a contract action." According to the court, "[e]xcept to establish the relationship between the parties, contract principles of law [were] not involved." *Anixter*, 123 Ill. App. 3d at 953.

However, in light of *Hayes*, *Anixter* is not helpful on the issue of whether the statute of limitations as to implied indemnity actions is affected by the medical malpractice period of repose. In *Hayes*, the court, in finding that the phrase "action for damages" included third-party actions for contribution, rather than only direct actions by injured parties, focused on the contributor's liability in tort to the injured party as the basis for his liability to other culpable parties. (*Hayes*, 136 Ill. 2d at 456-57.) There, the contribution plaintiffs argued that they were not seeking recovery of the damages sustained by the original plaintiff from the defendant, but rather, enforcement of an equitable duty to share liability among the parties responsible for the original plaintiff's injury. (*Hayes*, 136 Ill. 2d at 456.) The court reasoned:

> "We believe that the plaintiffs' interpretation of the medical malpractice statute of repose unduly limits its scope and misapprehends the purpose behind its enactment. It is true, as the plaintiffs observe, that an action for contribution need not be predicated on the same theory of recovery as that asserted by plaintiff in the underlying action. [Citations.] Nevertheless, 'the

basis for a contributor's obligation rests on his liability in tort to the injured party' [citation], even if the plaintiff in the direct action did not assert the theory of liability on which the third-party action relies. The action for contribution apportions the damages among the parties responsible for the original plaintiff's injury, and the contributor is obligated for the damages directly created by the contributor's negligent actions. The third-party plaintiff, therefore, is seeking from the third-party defendant those damages proximately caused by the negligent acts of the third-party defendant which the third-party plaintiff may be obligated to pay in the underlying suit. This leads us to conclude that an action for contribution is an 'action for damages' under the medical malpractice statute of repose." *Hayes*, 136 Ill. 2d at 456-57.

Similarly, Woodlawn, the third-party plaintiff (or indemnitee) here, is seeking from Dr. Caburnay, the third-party defendant (or indemnitor), those damages caused by him, which Woodlawn paid to the plaintiff in the underlying suit. See Bua, *Third Party Practice in Illinois: Express & Implied Indemnity*, 25 DePaul L. Rev. 287, 296 (1976) ("The indemnitee is liable to the injured party because of technicalities of legal doctrine or statute. The actual injury is a result of the act of the indemnitor").

According to Woodlawn, contribution and indemnity are distinct causes of action. (*Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 161, citing *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 254.) It argues that "[i]n indemnity, a passive or innocent party is discharged from all liability, whereas in a contribution action, liability is apportioned by degree of fault. *** Unlike contribution, indemnity involves a situation where an innocent party is found liable to the damaged party based upon its relationship with the responsible party. [Citation.] Contribution involves two or more defendants whose negligence contributed to the plaintiff's injury ***." (See *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *cert. denied sub nom. Hinckley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849.) Moreover, Woodlawn concludes, although a party can extinguish future liability in contribution cases by settling in good faith, a party remains exposed to future liability in indemnity cases even if it settles.

■■ ■ The difference between indemnity and contribution should not affect the application of the *Hayes* rationale to this case. The focus in *Hayes* on the third-party defendant's liability in tort to the in-

jured party is pertinent to indemnity as well as to contribution. "Both indemnity and contribution arise out of the same principle of restitution or unjust enrichment." (*American National Bank & Trust Co. v. Bransfield* (1991), 216 Ill. App. 3d 494, 498, *appeal allowed* (1991), 142 Ill. 2d 651.) "The intent underlying the passage of the Contribution Act is to create a separate right of restitution in the party seeking contribution ***." (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1023, *aff'd* (1986), 112 Ill. 2d 378, citing Comment, *Comparative Contribution: The Legislative Enactment of the Skinner Doctrine*, 14 J. Mar. L. Rev. 173, 193 (1980).) Similarly, implied indemnity is a contract implied in law as a restitutionary device arising from the legal obligation of the indemnitee to satisfy liability caused by actions of the indemnitor. (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 28.) " 'Indemnity and contribution are mutually exclusive remedies for allocating a plaintiff's damages among joint tortfeasors *with liability to the plaintiff.*' " (Emphasis added.) (*Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d at 161, quoting *Frazer*, 123 Ill. 2d at 254.) Although "[c]ontribution is a sharing of the loss" and "[i]ndemnity is a shifting of the loss[ ]" (2 S. Williston, Contracts §345, at 767 (3d ed. 1961)), "[n]either doctrine has any effect on the rights of the plaintiff." (Appel & Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative and Judicial Cooperation*, 10 Loy. U. Chi. L.J. 169, 170 (1979).) It is this liability to the injured party on which the court centered its reasoning in *Hayes.*

Woodlawn points out that according to the principles of indemnity law as explained by the court in *Anixter* and upon which it relies:

> "Under Illinois law, a defendant entitled to bring an implied contract of indemnity action has a choice of filing a third-party complaint against a party who may be liable to indemnify him as a part of the original action (Ill. Rev. Stat. 1983, ch. 110, par. 2—406(b)), or of waiting until the original action is over and filing a separate action for indemnity if he is found liable. In effect, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to promote settlement of all claims in one action. The third-party claim cannot be determined, however, before the underlying claim establishing liability and damages is determined. It follows that the cause of action for an implied contract of indemnity does not accrue until the defendant has a judgment entered against him or until he settles the claim made against him. Only at that point does the cause of action for an [implied contract of] indemnity ac-

crue and the statute of limitations begin to run." *Anixter*, 123 Ill. App. 3d at 953.

However, indemnity operates in much the same fashion as contribution. "[A] contribution claim may be asserted by a 'separate action before or after payment' *** where no suit is pending which was initiated by the injured party; however, when there is a pending action, the contribution claim should be asserted 'by counterclaim or by third-party claim' *in that action*. [Citation.]" (Emphasis in original.) (*Laue v. Leifheit* (1984), 105 Ill. 2d 191, 196; Ill. Rev. Stat. 1989, ch. 70, par. 305.) The plaintiffs in *Hayes* argued that they satisfied the rule in *Laue* requiring a third-party to assert a claim for contribution by counterclaim or third-party complaint during the pendency of the underlying action if one exists; and they also claimed that the rule in *Laue* governed all actions for contribution including actions based on the contributor's medical malpractice. (*Hayes*, 136 Ill. 2d at 459-60.) However, the court held that "*Laue* only established a procedural requirement that actions for contribution must be filed during the pendency of the underlying direct action," and rejected the argument "that all actions for contribution brought within the time an underlying suit is pending are timely filed." (*Hayes*, 136 Ill. 2d at 460.) According to the court, "[t]he medical malpractice statute of repose, on the other hand, 'is intended to terminate the possibility of liability after a period of time.' " *Hayes*, 136 Ill. 2d at 460, quoting *Mega*, 111 Ill. 2d at 422.

Similarly, as to the issue of accrual, although a contingent or inchoate right of contribution arises at the time of injury, it does not accrue until payment is made. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 321.) The plaintiffs in *Hayes* argued that the "application of the repose period to actions for contribution effectively abolishes contribution actions in all cases where the underlying action is filed close to or on the last day of the four-year repose period"; yet, the argument failed to sway the court from its adherence to the perceived intent of the legislature in enacting the repose period. (*Hayes*, 136 Ill. 2d at 460-61.) Citing the General Assembly's perception of "the medical malpractice insurance crisis as so grave that it limited to four years a patient's right to bring an action against certain health-care providers for damages arising out of patient care," the court in *Hayes* found "it difficult to believe that the General Assembly did not also intend to bar a culpable party's claim for contribution if not filed within the same statutory four-year period allowed an innocent plaintiff." (*Hayes*, 136 Ill. 2d at 461.) We believe that the same reasoning applies here as to the issue of indemnity.

Woodlawn further asserts that if the legislature wanted to include implied indemnity actions within the scope of the medical malpractice period of repose, it would have done so by using express language. Furthermore, according to Woodlawn, there must be a clear indication of legislative intent in order to disallow a cause of action based on a statute. (*Stephens v. McBride* (1983), 97 Ill. 2d 515.) In this case, the fact that the legislature removed the word "indemnity" from a prior version of the construction statute of repose, which is similar to the medical malpractice statute of repose, Woodlawn avers, indicates the intent to preserve rather than to bar such actions. (*People v. Youngbey* (1980), 82 Ill. 2d 556.) However, this is the same argument raised in Justice Calvo's dissent in *Hayes* which was rejected by the majority (*Hayes*, 136 Ill. 2d at 479-80 (Calvo, J., dissenting)); we must therefore reject it here.

Finally, Woodlawn urges that we should not apply a statute of limitations to this case because none of the reasons for which statutes of limitations are enacted apply. We find the argument to be plainly meritless. "A statute of limitations is to be construed in light of its objectives and to fulfill the object for which it was enacted." (*Miller v. Tobin* (1989), 186 Ill. App. 3d 175, 177.) The inclusion of third-party actions for indemnity within the ambit of the medical malpractice period of repose furthers the legislative intent behind that provision. The *Hayes* court found that intent in the legislature's response to a medical malpractice insurance crisis—a response in the form of an enactment that would enable insurance companies to better predict future liability by reducing the extended exposure of physicians and hospitals to medical malpractice liability. (*Hayes*, 136 Ill. 2d at 457-58.) "Because a suit for contribution against the insured for damages arising out of patient care exposes insurance companies to the same liability as if the patient were to have brought a direct action against the insured, we believe that the term 'or otherwise' in the medical malpractice statute of repose includes actions for contribution against a physician for injuries arising out of patient care." (*Hayes*, 136 Ill. 2d at 458.) Similarly, it cannot be gainsaid that a suit for indemnification exposes insurance companies to the same liability as if the patient had brought a direct action against the insured.

The supreme court's response to the argument that the term "otherwise" in the statute of repose did not apply to contribution actions because the Contribution Act did not exist at the time the law was enacted further illustrates the breadth of the holding in *Hayes*. The court found "that the term demonstrate[d] the General Assembly's desire at the time it originally enacted the statute to limit a phy-

sician's exposure to liability for damages for injury or death arising out of patient care under all theories of liability whether then existing or not." *Hayes*, 136 Ill. 2d at 459.

■ Our holding also comports with the canon of statutory interpretation which exalts the specific over the general. "Where there are two statutory provisions, one of which is general ***, and the other is particular ***, the particular provision must prevail and must be treated as an exception to the general provision, especially where the particular provision is later in time of enactment." (*Bowes v. City of Chicago* (1954), 3 Ill. 2d 175, 205, *cert. denied* (1954), 348 U.S. 857, 99 L. Ed. 675, 75 S. Ct. 81.) In *La Salle National Bank v. Edward M. Cohon & Associates, Ltd.* (1988), 177 Ill. App. 3d 464, which involved a claim for contribution, the court reasoned that the construction statute of limitations in section 13—214(a) of the Code of Civil Procedure which governed actions for acts or omissions in construction based on "tort, contract or otherwise," superseded the more general Contribution Act limitations provision, which governed contribution actions regardless of the type of activity from which the cause of action arose. (*La Salle*, 177 Ill. App. 3d at 473; Ill. Rev. Stat. 1987, ch. 110, pars. 13—214, 13—204.) Similarly, in our view, the medical malpractice period of repose, as an integral part of the medical malpractice statute of limitations which applies specifically to actions arising out of patient care, controls over the statute of limitations for actions on unwritten contracts and all civil actions not otherwise provided for in actions for implied indemnity which arise out of patient care.

For these reasons, we conclude that the medical malpractice four-year period of repose bars Woodlawn's implied indemnity claim against Dr. Caburnay and therefore we answer the circuit court's certified question relating to Dr. Caburnay in the affirmative.

## EXPRESS INDEMNITY

Dr. Kintanar contends that the medical malpractice period of repose applies also to the third-party action for express indemnity asserted against him by Woodlawn. The indemnity provision in Dr. Kintanar's employment agreement with Woodlawn provides in relevant part:

> "Anesthesiologist agrees to indemnify and hold the Hospital, its Officers, Directors and agents harmless from any and all damages, costs or expenses resulting from any failure in the Anesthesiologist's performance of his duties hereunder."

Woodlawn responds that its contract with Dr. Kintanar, which governs his administrative duties as head of the anesthesiology department, is "not a contract to perform medical services" and therefore "has nothing to do with section 13—212." Accordingly, Woodlawn argues that the breach of Dr. Kintanar's employment contract "did not arise out of patient care," but rather, from his "failure to properly perform his administrative duties." Because Woodlawn believes "Dr. Kintanar's contract must be governed by the principles of contract law," it asserts that the 10-year statute of limitations for actions on written contracts now found in section 13—206 of the Code of Civil Procedure (previously contained in Ill. Rev. Stat. 1977, ch. 83, par. 17) rather than the medical malpractice period of repose applies to its express indemnity claim. Dr. Kintanar replies that Woodlawn's breach of contract claim against him is premised on the underlying medical malpractice claim and that the agreement "clearly involves supervision of medical services, whether rendered directly by [him] or indirectly through others under his supervision."

"Ordinarily, the application of the statute of repose is a question of law ***." (*Cunningham v. Huffman* (1992), 223 Ill. App. 3d 878, 886.) "The phrase 'arising out of' is broad and generally means 'originating from,' 'growing out of,' or 'flowing from.' [Citation.]" (*Miller v. Tobin* (1989), 186 Ill. App. 3d 175, 177.) "It is well settled that the construction of a contract is a pure question of law which a court must determine from the clear language of the documents[ ]" (*Horton Industrial, Inc. v. Village of Moweaqua* (1986), 142 Ill. App. 3d 730, 738), and therefore we may determine it on review independent of the trial court's judgment. (*Transcraft Corp. v. Anna Industrial Development Corp.* (1991), 223 Ill. App. 3d 100, 103.) In construing a contract, "great weight is to be given to the principal, apparent purpose and intention of the parties at the time that they entered into the contract." *De Witt County Public Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 18.

Pursuant to his employment agreement with Woodlawn, in which he was referred to as "Anesthesiologist," Dr. Kintanar assumed the position of director of the department of anesthesia services. The responsibilities of the position included but were not limited to: (1) the "complete planning, directing, supervision and accountability for the activities of the Department of Anesthesia Services"; (2) the "availability and proper operating condition of equipment necessary to administer anesthesia and resuscitative efforts"; (3) the development of written guidelines and procedures concerning anesthesia safety; (4) participation in continuing education programs for the professional

staff and employees; (5) the "directing [of] \*\*\* nurse anesthetists \*\*\* and insuring of their competence" to induce and maintain anesthesia and manage untoward reactions; (6) the development of written policies, procedures and budgets; (7) the development of policies delineating pre-anesthesia and post-anesthesia responsibility; (8) the development, implementation and documentation of a comprehensive continuing education program for the department; and (9) responsibility for the administration of IV fluids and blood derivatives by developing written policies and procedures, by acting as a liaison with the nursing service and assisting in cases of difficult phlebotamies and by evaluating new products and procedures. In addition, the agreement required the director to "guarantee[ ] the availability to the Hospital of all services of at least two qualified Anesthesiologists during such times as the Hospital determines this to be required." The agreement further provided that Dr. Kintanar was to be at the hospital from 7 a.m. to 3 p.m. on Monday through Saturday, and at all other times upon notification by telephone or radio paging device.

In light of these provisions, we find, as a matter of law, that the agreement is instinct with the requirement that Dr. Kintanar perform medical services whether they be viewed as direct or indirect, administrative or supervisory; we do not read the contract as creating a firewall between his administrative or supervisory responsibilities over the medical care rendered in the department of anesthesia services and the medical care itself. We further note that Woodlawn's third-party complaint acknowledges, in the count asserting its express indemnity claim, that it could be found liable because of "the acts of Dr. Fernando Caburnay which acts were not properly supervised by Dr. David Kintanar pursuant to the Agreement incorporated herein as Exhibit 'C'." Moreover, the context in which Woodlawn's claim for indemnity arose and the premise upon which it is based are of no little significance here. Woodlawn's claim for indemnity from Dr. Kintanar is inextricably linked to the underlying medical malpractice claim asserted against it by the plaintiff. As illustrated by the language of the certified question itself, it is not disputed that the underlying claim arose out of medical care. Accordingly, we are led irresistibly to the conclusion that Woodlawn's third-party claim for express indemnity against Dr. Kintanar arose out of patient care.

In *Roberson v. Belleville Anesthesia Associates, Ltd.* (1991), 213 Ill. App. 3d 47, *appeal denied* (1991), 141 Ill. 2d 559, it was held, based on *Hayes*, that the medical malpractice period of repose applied to actions for implied indemnity because, "[a]s is the case with contribution, the basis of an indemnitor's obligation rests on his liability in

tort to the injured party." Accordingly, the court found that "[a]n action for implied indemnity is just as much an 'action for damages' as is an action for contribution." (*Roberson*, 213 Ill. App. 3d at 51.) However, the court in *Roberson* declined to apply the medical malpractice period of repose to a claim for express indemnity. The court reasoned:

"An action for express indemnity, which is based on a contract, is governed by section 13—206 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—206). Actions for express indemnity are not affected by the Contribution Act. [Citations.]" *Roberson*, 213 Ill. App. 3d at 51.

That the promulgation of the Contribution Act resulted in the demise of implied indemnity based on active-passive negligence and did not affect actions based on express indemnity (*Allison*, 113 Ill. 2d 26) is not determinative of the issue of whether the medical malpractice period of repose or the statute of limitations for actions based on written contracts applies to an action for express contractual indemnity premised upon an underlying medical malpractice claim. As previously noted, in *Hayes* the court held that an action for contribution based on an underlying medical malpractice claim, although filed during the pendency of the underlying action as required by the Contribution Act, was barred by the medical malpractice statute of repose. (*Hayes*, 136 Ill. 2d 450.) However, it does not follow that the choice between the medical malpractice period of repose and the Contribution Act with respect to an action for contribution affects the choice between the medical malpractice period of repose and the statute of limitations relating to actions on written contracts with respect to an action for express contractual indemnity.

█ As we have indicated above, the medical malpractice period of repose covers actions for damages for injury or death against any physician or duly licensed hospital arising out of patient care "whether based upon tort, or *breach of contract*, or otherwise." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 83, par. 22.1.) And, as we have seen, in *Hayes*, the court interpreted the phrase "action for damages" and the term "otherwise" to include third-party actions for contribution. (*Hayes*, 136 Ill. 2d at 456, 458.) Further, in interpreting the phrase "action for damages" the court rejected the plaintiff's contention that the statute applied only to direct actions by an injured plaintiff. (*Hayes*, 136 Ill. 2d at 456-57.) Therefore, we respectfully decline to follow the fifth district's decision in *Roberson* in so far as it holds that the repose period does not apply to third-party actions grounded on express contractual indemnity. Accordingly, we hold that a third-

party action for express contractual indemnity, which arises out of patient care, falls squarely within the scope of the medical malpractice period of repose as an action for damages based on "contract."

Furthermore, even in the totally improbable event that third-party actions for express contractual indemnity would not come within its "breach of contract" provision, we hold that a third-party action for express contractual indemnity, which arises out of patient care, is an action for damages which falls within the scope of the term "otherwise" in the medical malpractice statute of repose for many of the reasons discussed previously with respect to implied indemnity. In further support of this view we rely on the authority of *Board of Library Directors v. Skidmore, Owings & Merrill* (1991), 215 Ill. App. 3d 69, in which the court applied the construction statute of limitations in section 13—214(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—214(a)), which governs actions for acts or omissions relating to construction "based on tort, contract or otherwise," to a claim for express contractual indemnity. In reaching its decision, which predated *Hayes*, the court in *Skidmore* relied on the authority of *La Salle National Bank v. Edward M. Cohon & Associates, Ltd.* (1988), 177 Ill. App. 3d 464, which held that the construction statute of limitations in section 13—214(a) of the Code of Civil Procedure applied to actions for contribution, and *Hartford Fire Insurance Co. v. Architectural Management, Inc.* (1987), 158 Ill. App. 3d 515, *appeal denied* (1987), 117 Ill. 2d 543, which held that the construction statute of repose in section 13—214(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 214(b)) applied to actions for contribution. (*Skidmore*, 215 Ill. App. 3d at 74.) In both of these cases, the courts relied on the term "otherwise" in reaching their decisions. (*La Salle*, 177 Ill. App. 3d at 472; *Hartford*, 158 Ill. App. 3d at 518.) As with implied indemnity, we believe our decision with respect to express contractual indemnity gives effect to what the *Hayes* court referred to as the legislature's perceived intent in enacting the medical malpractice period of repose.

For the foregoing reasons, we answer the circuit court's certified question relating to Dr. Kintanar in the affirmative.

### PROSPECTIVE APPLICATION

■ As a result of our holding in favor of the doctors, we must examine Woodlawn's alternative argument that our interpretation of the period of repose be applied prospectively only. "However, the Illinois Supreme Court has consistently stated that it is within the inherent power of *the highest court of this State* to give a decision prospec-

tive or retroactive application. [Citations.]" (Emphasis added.) (*Strang v. Department of Transportation* (1990), 206 Ill. App. 3d 368, 373.) Therefore, we clearly do not have the authority to so limit the application of our decision. *Strang*, 206 Ill. App. 3d at 373.

For these reasons, we reverse the judgment of the circuit court with instructions to vacate the orders denying Dr. Caburnay's motion for summary judgment and Dr. Kintanar's motion to dismiss and to enter appropriate orders in favor of the doctors.

Reversed and remanded.

HARTMAN, P.J., and McCORMICK, J., concur.