MARSHALL KERSCHNER et al., Plaintiffs, v. WEISS AND COMPANY et al., Defendants (Weiss and Company, Plaintiffs; Marshall Kerschner et al., Defendants; Marshall Kerschner et al., Third-Party Plaintiffs-Appellants; Elliott I. Goodman et al., Third-Party Defendants-Appellees).

First District (6th Division)   No. 1—94—4012

Opinion filed June 28, 1996.

498

RAKOWSKI, J., dissenting.

Abrams & Chapman, of Chicago (Sherwin D. Abrams, of counsel), for appellants.

Clausen & Miller, P.C., of Chicago (James T. Ferrini, James O. Nolan, Richard M. Kaplan, Anne L. Blume, and Edward M. Kay, of counsel), for appellees.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:
This appeal arises out of a dispute over the dissolution of an accounting partnership. At issue is the propriety of the trial court's entry of summary judgment in favor of third-party defendants, Elliott I. Goodman and the law firm of Gottlieb and Schwartz, on the claim for indemnity brought by third-party plaintiffs, Marshall Kerschner and Ronald Karlin.

The record reveals that Marshall Kerschner, Ronald Karlin, Burton Sharpe, Jerry Weiss, Franklyn Lee, and Anne Seefor were partners in an accounting firm known as Weiss & Company. In the summer of 1989, Kerschner, Karlin and Sharpe (KKS) retained Elliott I. Goodman, a partner in the law firm of Gottlieb & Schwartz (Goodman), to provide professional advice relative to their withdrawal from Weiss & Company and to the formation of a new accounting partnership.

After consulting with Goodman and prior to withdrawing from the partnership, KKS informed certain clients of Weiss & Company of their intention to leave that firm and requested those clients direct Weiss & Company to deliver their client files to KKS. They also offered employment with their new firm to certain employees of Weiss & Company. In addition, KKS withdrew $150,000 from the Weiss & Company bank account and deposited those funds in their personal accounts. After announcing their withdrawal from Weiss & Company, KKS accepted payment on accounts receivable due Weiss & Company and deposited such funds in the account held by the new accounting

firm. KKS also billed clients in the name of the new firm for services performed while they were still partners in Weiss & Company.

In October 1989, KKS announced their withdrawal from Weiss & Company and demanded that the remaining partners deliver to them the client files for all clients who had signed letters of direction to that effect. The remaining partners refused to comply with these directions, and KKS filed an action in chancery against them, seeking production of those client files.

The trial court entered an agreed order, requiring the partners to deliver the client files to KKS and requiring KKS to return $75,000 to the partners. The furniture and office equipment of the partnership were divided between the parties, and the remaining Weiss partners were ordered to furnish an accounting to KKS, calculating their remaining interest in the firm. This accounting established that KKS were entitled to receive approximately $49,000 in addition to the assets previously distributed. KKS filed objections to the accounting, and the trial court transferred the case to the law division for trial on the issues raised by the objections.

In February 1991, the remaining Weiss partners (the plaintiffs) filed a separate action against KKS, and the two actions were consolidated for trial. Plaintiffs sought an accounting as well as recovery of damages for the allegedly wrongful termination of the Weiss partnership, for alleged breaches of fiduciary duty, and for alleged tortious interference with the contractual relations of the Weiss partnership.

Thereafter, Kerschner and Karlin filed a third-party complaint against Goodman and the law firm of Gottlieb and Schwartz in the 1991 case. Sharpe elected not to join as a third-party plaintiff. In the third-party complaint, Kerschner and Karlin alleged that Goodman had advised them that, prior to announcing their withdrawal from the Weiss partnership, it was lawful and advisable to establish a new accounting firm, to lease office space in the name of the new firm and to obtain insurance and utility service. Kerschner and Karlin claimed that Goodman also advised them that it was lawful and advisable to solicit clients and employees of the Weiss partnership, to withdraw funds from the Weiss partnership for deposit in their personal accounts, to accept payment on accounts receivable due the Weiss partnership, to deposit such funds in the new accounting firm's account and to bill clients in the name of the new accounting firm for services performed while they were still members of the Weiss partnership.

Kerschner and Karlin alleged that Goodman had acted negligently in advising them on their withdrawal from the Weiss partner-

ship and on the creation of their new accounting firm. They also alleged that they would not have performed any of the acts set forth above had they not been advised by Goodman that it was lawful and advisable for them to do so. In the prayer for relief, Kerschner and Karlin sought to recover from Goodman and his law firm only those amounts for which they may be held liable to the plaintiffs as a result of having followed Goodman's allegedly negligent advice.

Plaintiffs subsequently amended their complaint against KKS. The amended complaint added as defendants Diana Nolan and Paul Karlin and alleged that these additional defendants had "conspired" with KKS to remove funds from the Weiss partnership and to solicit clients and employees of the partnership. Kerschner and Karlin did not request leave to amend their third-party complaint.

Goodman and his firm filed an answer, denying the substantive allegations in the third-party complaint. They then filed a motion for summary judgment, asserting that they were entitled to judgment as a matter of law based upon the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1992)) and upon the law governing claims for implied indemnity. The motion for summary judgment was predicated upon the assertions contained in the pleadings and was not supported by affidavit, deposition testimony, or any other evidentiary material.

Kerschner and Karlin opposed the motion for summary judgment, claiming that the Contribution Act was inapplicable and that Goodman and his firm were not entitled to judgment as a matter of law. In their reply memorandum, Goodman and his firm argued that Kerschner and Karlin had no cause of action and that the third-party complaint was legally insufficient.

The trial court granted the motion for summary judgment, without hearing oral argument. The court's order included a finding that there was no just reason to delay enforcement or appeal of the order. Kerschner and Karlin have appealed the entry of summary judgment in favor of Goodman and his law firm.

■ Summary judgment is proper when the pleadings, depositions, affidavits, and admissions on file demonstrate that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. See 735 ILCS 5/2—1005(c) (West 1994). In the absence of affidavits, admissions or deposition testimony to support the motion for summary judgment, we look to the allegations contained in the pleadings to determine whether the third-party defendant was entitled to judgment as a matter of law.

The question presented in this appeal is whether individual members of an accounting partnership, who have been sued for

wrongful termination of the partnership, can maintain a third-party action for implied indemnity against the lawyers who provided them with professional advice regarding their termination of the partnership and withdrawal from the firm.

■ Assertion of a third-party claim is the procedural device by which a defendant in a lawsuit is permitted to bring an additional party into the action. The filing of a third-party action is governed by section 2—406 of the Illinois Code of Civil Procedure, which provides as follows:

> "[A] defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claim against him or her." 735 ILCS 5/2—406(b) (West 1994).

The purpose of this procedure is to avoid a multiplicity of litigation and to provide a means of resolving in one action an entire matter arising from a single set of facts. See *People v. Brockman*, 143 Ill. 2d 351, 364, 574 N.E.2d 626 (1991). Third-party actions are favored, and trial courts should be liberal in granting such requests. *Brockman*, 143 Ill. 2d at 365. In a proper third-party action, the liability of the third-party defendant is dependent upon the liability of the third-party plaintiff to the original plaintiff. *Brockman*, 143 Ill. 2d at 368.

■ Because a third-party claim is premised upon derivative liability, the basis for most such actions has been indemnity or contribution. *People v. Fiorini*, 143 Ill. 2d 318, 343, 574 N.E.2d 612 (1991); *Brockman*, 143 Ill. 2d at 365. The right of indemnity and the right of contribution are separate and distinct theories of recovery and are mutually exclusive remedies for allocating the plaintiff's damages. See *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 254, 527 N.E.2d 1248 (1988). Contribution contemplates the distribution of liability for a loss among joint tortfeasors according to each tortfeasor's percentage of relative fault. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 118, 601 N.E.2d 704 (1992); *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1, 14, 374 N.E.2d 437 (1977). Indemnity is a common law doctrine which shifts the entire responsibility from the party who has been compelled to pay the plaintiff's loss to another who actually was at fault. *Hahn v. Norfolk & Western Ry. Co.*, 241 Ill. App. 3d 97, 101-02, 608 N.E.2d 683 (1993). The right to indemnity may be express, as in a contractual provision, or may be implied in law, arising in situations in which a promise to indemnify can be implied from the relationship between the parties. *Dixon*, 151 Ill. 2d at 118.

Implied indemnity emerged as a means to avoid the harsh result of the common law rule prohibiting contribution and evolved from

two distinct theories, one based on tort principles and one based on quasi-contract principles. *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347, 350, 609 N.E.2d 285 (1992). The theory based on tort principles developed into the doctrine of "active-passive negligence," which allowed a less culpable, or "passively" negligent, tortfeasor to shift the entire burden of the plaintiff's loss to a more culpable, or "actively" negligent, tortfeasor. *American National Bank and Trust Co.*, 154 Ill. 2d at 351. The need for this theory of recovery was ultimately extinguished by the adoption of contribution among joint tortfeasors in *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1, 374 N.E.2d 437 (1977), which was subsequently codified by the Contribution Act, and by the adoption of a form of pure comparative negligence in *Alvis v. Ribar*, 85 Ill. 2d 1, 421 N.E.2d 886 (1981). See *Frazer*, 123 Ill. 2d at 260-61, quoting *Allison v. Shell Oil Co.*, 113 Ill. 2d 26, 31, 34, 495 N.E.2d 496 (1986).

■ Yet, implied indemnity based on quasi-contract principles is supported by a fundamentally different premise. *American National Bank & Trust Co.*, 154 Ill. 2d at 351; *Frazer*, 123 Ill. 2d at 255. This theory recognizes that a blameless party (the indemnitee) may be held derivatively liable to the plaintiff based upon that party's legal relationship with the one who actually caused the plaintiff's injury (the indemnitor). See *American National Bank & Trust Co.*, 154 Ill. 2d at 351; *Ashley v. Evangelical Hospitals Corp.*, 230 Ill. App. 3d 513, 518, 594 N.E.2d 1269 (1992). In such circumstances, the law implies a promise by the indemnitor to make good the loss incurred by the indemnitee. *Dixon*, 151 Ill. 2d at 118-19; *Frazer*, 123 Ill. 2d at 255. A party whose liability is solely derivative may assert a claim for implied indemnity under this theory. *American National Bank & Trust Co.*, 154 Ill. 2d at 354; *Bristow v. Griffitts Construction Co.*, 140 Ill. App. 3d 191, 198, 488 N.E.2d 332 (1986).

To state a cause of action for implied indemnity based upon quasi-contractual principles, a third-party complaint must allege (1) a pretort relationship between the third-party plaintiff and the third-party defendant, and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant. *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 255, 527 N.E.2d 1248 (1988); *Van Slambrouck v. Economy Baler Co.*, 105 Ill. 2d 462, 475 N.E.2d 867 (1985). Classic pretort relationships which have given rise to a duty to indemnify include lessor and lessee (*Mierzejwski v. Stronczek*, 100 Ill. App. 2d 68, 241 N.E.2d 573 (1968)), employer and employee (*Embree v. DeKalb Forge Co.*, 49 Ill. App. 2d 85, 199 N.E.2d 250 (1964)), owner and his lessee (*Blaszak v. Union Tank Car Co.*, 37 Ill. App. 2d

12, 184 N.E.2d 808 (1962)), and master and servant (*Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.*, 343 Ill. App. 148, 98 N.E.2d 783 (1951)).

■ In the instant case, Kerschner and Karlin have clearly alleged a pretort relationship with Goodman. The third-party complaint alleged that KKS retained Goodman in the summer of 1989 to provide professional advice regarding their withdrawal from Weiss & Company and regarding the formation of a new accounting partnership. This attorney-client relationship existed prior to the conduct upon which plaintiffs' tort claims are predicated. As a result of this relationship, Goodman assumed contractual and fiduciary duties to Kerschner, Karlin and Sharpe. The assertion of this relationship is sufficient to satisfy the first element necessary to allege a claim for implied indemnity.

In addition, Kerschner and Karlin have alleged a qualitative difference between their conduct and that of Goodman. In their third-party complaint, Kerschner and Karlin alleged that Goodman had advised them that, prior to announcing their withdrawal from the Weiss partnership, it was lawful and advisable to establish a new accounting firm, to lease office space in the name of the new firm and to obtain insurance and utility service, to solicit clients and employees of the Weiss partnership, to withdraw funds from the Weiss partnership for deposit in their personal accounts, to accept payment on accounts receivable due the Weiss partnership, to deposit such funds in the new accounting firm's account and to bill clients in the name of the new accounting firm for services performed while they were still members of the Weiss partnership.

Kerschner and Karlin also alleged that they would not have performed any of the acts set forth above had they not been advised by Goodman that it was lawful and advisable for them to do so. The allegations in the third-party complaint assert that the actions of Kerschner and Karlin were controlled by the professional advice and judgment of Goodman. These assertions alleged a qualitative distinction between the conduct of Kerschner and Karlin and that of Goodman and were adequate to meet the second element of an implied-indemnity claim.

■ A third-party complaint must state a cause of action and disclose some relationship upon which a duty to indemnify may be predicated. *Brockman*, 143 Ill. 2d at 365, citing *Muhlbauer v. Kruzel*, 39 Ill. 2d 226, 231-32, 234 N.E.2d 790 (1968). A complaint against a lawyer for professional malpractice may be couched in either contract or tort. *Collins v. Reynard*, 154 Ill. 2d 48, 50, 607 N.E.2d 1185 (1992). A cause of action for legal malpractice based upon negligence is

premised upon a breach of the attorney's duties to his client, and an attorney is liable to his client for malpractice when he fails to exercise a reasonable degree of care and skill. *Smiley v. Manchester Insurance & Indemnity Co.*, 71 Ill. 2d 306, 313, 375 N.E.2d 118 (1978). In their third-party complaint, Kerschner and Karlin alleged that Goodman had acted negligently in advising them regarding their withdrawal from the Weiss partnership and regarding the formation of a new accounting practice. Specifically, they alleged that no competent lawyer, exercising a reasonable degree of care and skill, would have given Kerschner and Karlin such advice. Such allegations in the third-party complaint are sufficient to assert a claim for legal malpractice.

■ Goodman contends that Kerschner and Karlin are not entitled to contribution under the Contribution Act and that they cannot recover under the doctrine of "active-passive negligence." Although both of these contentions are correct, they have no relevance in the case at bar.

The Contribution Act envisions a sharing of common liability by two or more parties who are jointly responsible for the injury suffered by the plaintiff. See *Frazer*, 123 Ill. 2d at 256; *Doyle v. Rhodes*, 101 Ill. 2d 1, 17, 461 N.E.2d 382 (1984). Because Kerschner, Karlin and Goodman are not jointly liable in tort for the claims asserted by plaintiffs in the underlying action, they are not joint tortfeasors, and there is no right of contribution among them. *Brockman*, 143 Ill. 2d at 372; *Hopkins v. Powers*, 113 Ill. 2d 206, 211, 497 N.E.2d 757 (1986). We note, however, Kerschner and Karlin have not sought to apportion the liability to the plaintiffs based upon relative fault. Consequently, their third-party action does not attempt to assert a claim for contribution.

Goodman also contends that because the doctrine of "active-passive negligence" no longer exists, it cannot support a claim for implied indemnity. As previously noted, the doctrine of "active-passive negligence" was applicable only where the claim for indemnity was based upon tort principles, *i.e.*, where the third-party plaintiff and the third-party defendant were joint tortfeasors. Kerschner, Karlin and Goodman are not joint tortfeasors, and the third-party claim for implied indemnity was predicated upon quasi-contractual principles rather than on tort principles. Thus, the now obsolete doctrine of "active-passive negligence" is irrelevant to our consideration of the third-party claim.

The Contribution Act did not abolish all forms of common law implied indemnity, but only that premised on apportionment of common liability based on relative fault. *American National Bank &*

*Trust Co.*, 154 Ill. 2d at 353. Implied indemnity predicated upon quasi-contractual principles remains effective in cases where, as here, the indemnitee's liability is solely derivative. See *American National Bank & Trust Co.*, 154 Ill. 2d at 354; *Bristow*, 140 Ill. App. 3d at 197-98.

■ Because a third-party claim for indemnity cannot be determined until the underlying action establishing liability and damages is decided, the claim for implied-indemnity does not accrue until the defendant has a judgment entered against him or until he settles the underlying suit against him. *Ashley*, 230 Ill. App. 3d at 519. However, under Illinois law, a defendant entitled to bring an implied indemnity claim has a choice of filing a third-party complaint against a party who may be liable to indemnify him as a part of the original action or of waiting until the original action is over and filing a separate action for indemnity if he is found liable. See *Ashley*, 230 Ill. App. 3d at 519; 735 ILCS 5/2—406 (West 1994). Thus, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to facilitate resolution of all claims in one action. *Ashley*, 230 Ill. App. 3d at 519. Where a defendant has properly stated a claim for implied indemnity based upon derivative liability, that claim may be joined with the underlying action. *Brockman*, 143 Ill. 2d at 369.[1]

■ In the case at bar, Kerschner and Karlin asserted that their actions were directed by Goodman. Accordingly, their liability to the plaintiffs, if any, was wholly derivative, arising solely out of the advice offered by Goodman. See generally *Faier v. Ambrose & Cushing, P.C.*, 154 Ill. 2d 384, 386, 609 N.E.2d 315 (1993). Thus, Kerschner and Karlin have properly stated a claim for implied indemnity based upon derivative liability, and, therefore, the third-party claim against Goodman may be joined with the underlying action of the plaintiffs. This result promotes the goals of judicial economy and of avoiding a difference in time between a judgment against a defendant and a judgment in his favor against a third-party defendant. See *Fiorini*,

---

[1]We recognize that in *Farm Credit Bank v. Gamble*, 197 Ill. App. 3d 101, 554 N.E.2d 779 (1990), the third district held that a third-party action against an attorney, asserting claims for fraud and legal malpractice, was premature. This ruling was predicated upon the court's determination that the third-party plaintiff could not demonstrate that he had suffered any damages as a result of the attorney's conduct until after the underlying suit by the original plaintiff had been decided. We note, however, that the court did not discuss the applicability of section 2—406(b) or the implied-indemnity theory of recovery. In light of our decision that those concepts are fundamental to consideration of the issues before us, we hold that the decision in *Farm Credit Bank* is not controlling in the case at bar.

143 Ill. 2d at 342, citing *Muhlbauer*, 39 Ill. 2d at 229. To hold otherwise would require duplicative litigation on many, if not all, of the issues to be tried in the underlying action.

Although not falling precisely within the classic forms of derivative liability, the claims asserted by the plaintiffs and by KKS are sufficiently interrelated to allow a third-party action. A finding of liability against KKS in the underlying action is a necessary predicate to a determination of liability in the third-party action against Goodman. Consequently, the broad purposes of judicial economy are best served by having both actions tried together. In light of the procedural posture of this case, our resolution avoids the fundamental unfairness of allowing the entry of summary judgment in favor of Goodman, which constitutes an adjudication on the merits, to forever bar a claim for legal malpractice by Kerschner and Karlin.

Goodman has also argued that Kerschner and Karlin are precluded from asserting a claim for indemnity because the underlying complaint, as finally amended, contained allegations which were not included in the third-party complaint. Specifically, Goodman refers to the plaintiffs' allegations that KKS neglected their specific duties to the partnership, failed to perform services for clients of the partnership, and conspired with Nolan and Paul Karlin to remove funds from the Weiss partnership and to solicit clients and employees of the partnership. We note that the plaintiffs' amended complaint did not include a count for negligence. Rather, the allegations set forth above constituted minor components of the aggregated allegations supporting the claims for wrongful termination, breach of fiduciary duties, and for tortious interference with contractual relations. As such, these allegations were insufficient to preclude Kerschner and Karlin from asserting a claim for implied indemnity. Because the claim raised by Kerschner and Karlin was derivative, it was properly brought as a third-party claim for implied indemnity.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

EGAN, J., concurs.

JUSTICE RAKOWSKI, dissenting:
For the reasons which follow, I respectfully dissent from the majority holding that Kerschner and Karlin are entitled to maintain a third-party action based on implied quasi-contractual indemnity.

In a line of carefully drafted post-Contribution Act opinions, our supreme court has considered the continued viability of implied indemnity as a method of third-party recovery. The rule from these cases is consistent and crystal clear: a party who is culpable, negligent, or factually at fault is not entitled to quasi-contractual indemnification.

In *Allison v. Shell Oil Co.*, 113 Ill. 2d 26 (1986), our supreme court noted that active-passive indemnity "perpetuates a theory of fault repudiated in *Alvis* [*v. Ribar*, 85 Ill. 2d 1 (1981)]: that one party was ultimately responsible for any injury, and that courts were charged with employing legal doctrine in a game of pin the tail on the donkey." *Allison*, 113 Ill. 2d at 34. The court pointed out that since the adoption of "comparative negligence and the principles of apportioning rather than affixing liability," there is no longer a need for implied indemnity based upon an active-passive distinction. *Allison*, 113 Ill. 2d at 34. As a result, "[a]ctive-passive indemnity is no longer a viable doctrine for shifting the entire cost of tortious conduct from one tortfeasor to another." *Allison*, 113 Ill. 2d at 35. The *Allison* court limited its holding to situations where liability is based on fault or negligence and declined to address whether a tortfeasor whose liability is vicariously imposed may shift liability entirely to the party actually at fault. *Allison*, 113 Ill. 2d at 35.

However, following *Allison*, in *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245 (1988), the court noted that indemnification may arise from contract or from situations in which a promise to indemnify can be implied from the relationship among tortfeasors. "The fundamental premise for [indemnification] is that the indemnitee, although without fault in fact, has been subjected to liability solely because of the legal relationship with the plaintiff or a nondelegable duty arising out of common or statutory law." *Frazer*, 123 Ill. 2d at 255.

In *Thatcher v. Commonwealth Edison Co.*, 123 Ill. 2d 275 (1988), decided the same day as *Frazer*, the court held that although implied indemnity was not abolished by the Contribution Act, the action "cannot be maintained where the one seeking indemnity was negligent or otherwise at fault in causing the loss." *Thatcher*, 123 Ill. 2d at 278.

In *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108 (1992), the court reaffirmed its holding in *Frazer* and *Thatcher* that implied indemnity in a defective products case is available only where the party seeking indemnity was not negligent or otherwise at fault. *Dixon*, 151 Ill. 2d at 120-21.

In *Dixon*, the plaintiff was a passenger in a Jeep driven by a co-worker in the course of their employment. The Jeep went out of

control and crashed. The plaintiff then sued his employer under the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.* (1988)), the driver in negligence, and the Jeep defendants in strict products liability. The employer and driver asserted a third-party action against the Jeep defendants. In denying implied indemnity, the court held the scope of implied indemnity in a defective products case is limited to those situations where the indemnitee was not at fault in causing the loss. *Dixon*, 151 Ill. 2d at 119.

> "Where the party seeking indemnity was not at fault, it can rightfully seek to shift its entire liability to the truly responsible party. However, if the party seeking indemnity is found to have been at fault in causing the injury, fairness dictates that it not be allowed to shift the entire loss to other parties." *Dixon*, 151 Ill. 2d at 119.

Consequently, because the driver's liability to the plaintiff was based on negligence, the driver was barred from seeking indemnity. Likewise, because the employer's liability was vicarious, the driver's negligence would be charged to the employer, thereby precluding the employer from seeking implied indemnity from the Jeep defendants. *Dixon*, 151 Ill. 2d at 121-22.

In *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347 (1992), the court held the Contribution Act did not abolish actions for implied indemnity in vicarious liability situations. *American National Bank & Trust Co.*, 154 Ill. 2d at 348. In reaching this conclusion, the court noted the distinction between active-passive and quasi-contractual indemnity.

On the one hand, the premise supporting implied indemnity in a quasi-contractual context "recognizes that the law may impose upon a blameless party liability derivatively through another's conduct." *American National Bank & Trust Co.*, 154 Ill. 2d at 351. In cases of vicarious liability, only the agent is at fault in fact, while the principal is blameless for the plaintiff's injuries. *American National Bank & Trust Co.*, 154 Ill. 2d at 354. Thus, "reason may exist to continue to recognize the viability of implied indemnity where a principal is vicariously liable for the conduct of an agent or for the nondelegable acts of an independent contractor." *American National Bank & Trust Co.*, 154 Ill. 2d at 351.

On the other hand, the Contribution Act is premised on fault-based considerations and is thus "theoretically 'ill-suited to the task of addressing' quasi-contractual relationships." *American National Bank & Trust Co.*, 154 Ill. 2d at 353-54, quoting Kandaras & Kelley, *New Developments in the Illinois Law of Contribution Among Joint Tortfeasors*, 23 Loy. U. Chi. L.J. 407, 448 (1992).

In the case *sub judice*, Kerschner and Karlin are charged with

actual wrongdoing for the wrongful termination of the partnership, breaches of fiduciary obligations, and tortious interference with contractual relations. Kerschner and Karlin are not susceptible to liability solely because of a legal relationship, nondelegable duty, or vicarious liability scheme. One cannot reasonably say that a person so charged is blameless, not culpable, or not factually at fault. The fact that Kerschner and Karlin relied on the attorney's advice in acting as they did may suggest a malpractice claim. However, it does not render their actions any less culpable with respect to Weiss. Put another way, Kerschner and Karlin are subject to liability for their own actual conduct, rather than for the actions of their attorney.

*Dixon* is directly on point. Kerschner and Karlin are barred from seeking implied indemnity because they are charged with actual wrongdoing. To allow a third-party action here amounts to a resurrection of active-passive indemnity and a legal "game of pin the tail on the donkey." See *Allison*, 113 Ill. 2d at 34.

Finally, the majority's reliance on *Faier v. Ambrose & Cushing, P.C.*, 154 Ill. 2d 384 (1993), is without merit. There, the majority specifically held the relationship was vicarious. Although Justice Harrison's dissent disputed a vicarious relationship, this finding is the linchpin of the majority's holding.

In sum, because Kerschner and Karlin have not set forth a proper claim for contractual implied indemnification, subrogation, breach of warranty, or some form of derivative liability, they are not entitled to maintain a third-party action pursuant to section 2—406 of the Illinois Code of Civil Procedure. Accordingly, I would affirm the finding of the circuit court.