In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-1050

BCS INSURANCE COMPANY,

*Plaintiff-Appellant*,

*v.*

GUY CARPENTER & CO.,
INCORPORATED,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3808—**Samuel Der-Yeghiayan,** *Judge*.

———————

ARGUED OCTOBER 19, 2006—DECIDED JUNE 18, 2007

———————

Before RIPPLE, MANION and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. This case arises out of reinsurance agreements between BCS Insurance Company ("BCS") and a third party, Insurance Specialists, Inc. ("ISI"). These reinsurance agreements were negotiated by BCS' former reinsurance intermediary Guy Carpenter & Company, Inc. ("Guy Carpenter"). In a six-count complaint, BCS sued Guy Carpenter, alleging that Guy Carpenter had failed to obtain adequate reinsurance for BCS. BCS argues that Guy Carpenter's actions resulted in an arbitration award against BCS and in favor of BCS' reinsurers. The

parties filed cross-motions for summary judgment, and the district court ruled in favor of Guy Carpenter. For the reasons set forth in this opinion, we affirm in part and reverse in part the judgment of the district court.

# I

## BACKGROUND

### A.

Guy Carpenter, through its predecessor in interest, H.S. Fox, introduced BCS to ISI. ISI sold extended warranty programs to a variety of businesses around the country for products including automobiles, recreational vehicles, computers and appliances. ISI itself was not an insurer and therefore needed to affiliate with a company licensed to provide insurance for the warranties it sold. The ISI program was a "fronting" program. An insurance company (here, BCS) issued insurance policies to customers, acting as the "front," but was reinsured for the risk of loss associated with the program. BCS insured certain service contracts administered by ISI. Guy Carpenter served as the reinsurance intermediary; its responsibility was to secure reinsurance for BCS on the ISI program.

In 1992, BCS and ISI entered into a management agreement which governed this fronting relationship. This agreement established ISI as BCS' agent in connection with the administration of the ISI program, giving ISI the authority to negotiate, underwrite, decline and accept risk. It also granted ISI the authority to consent to premium rates on behalf of BCS.

BCS had no experience in the extended warranty business. During these negotiations with ISI, Guy Carpenter

acted as BCS' exclusive reinsurance intermediary, and in that capacity, was responsible for procuring reinsurance for BCS. Therefore, BCS, the insurance company, was *re*insured against risks that it incurred as insurer for the ISI program. Under this arrangement, ISI would submit claims in connection with the ISI program to BCS; BCS would pay those claims and then seek reimbursement from the reinsurers. From 1992 to 1995, BCS, through Guy Carpenter, reinsured the program domestically and retained a portion of the "underwriting risk" associated with the program; BCS could incur liability despite the fact that it was reinsured.

In 1995, BCS notified Guy Carpenter of its intention to terminate its participation in the ISI program at the end of the 1995 reinsurance treaty year because the ISI program had been performing poorly. Guy Carpenter encouraged BCS to continue fronting the ISI program and stated that the reinsurance for the program was to move to the London market. The parties agreed then that BCS would continue its participation in the program. This agreement became known as the 1996 reinsurance treaty. However, unlike the previous arrangement, Guy Carpenter represented that the program would be 100% reinsured by a group of London-based reinsurers (the "London reinsurers"). Therefore, BCS would no longer have any risk whatsoever associated with the program. Guy Carpenter further stated that it would procure this reinsurance on behalf of BCS. Guy Carpenter was never in privity with ISI.

BCS alleges that Guy Carpenter in fact never properly procured reinsurance for the ISI program. The London reinsurers consistently reimbursed BCS on all of its claims until 2000. However, apparently without the knowledge of BCS, the London reinsurers had sent a

reservation of rights letter to Guy Carpenter. This reservation of rights letter preserved the reinsurers' right to raise coverage issues at some unspecified time in the future.

The ISI program continued to perform poorly and, ultimately, disputes arose as to who bore responsibility for the losses under the program. In 2000, after a monthly accounting, the London reinsurers refused to make any additional payments to BCS and demanded arbitration to rescind the reinsurance agreements or to obtain compensation from BCS for various losses. In order to toll the statute of limitations on any claims BCS had against Guy Carpenter, the parties entered into a tolling agreement on February 15, 2001.

BCS entered into arbitration with the London reinsurers seeking compensation for losses allegedly sustained by BCS. The London reinsurers brought a recision claim, on which the arbitrators found for BCS.[1] The London reinsurers, however, prevailed in arbitration on two other claims. The arbitration panel found that BCS, rather than the reinsurers, was responsible for losses incurred as a result of the ISI program. The arbitration panel also found that contracts related to the ITT Lyndon business[2] had not been ceded properly to the reinsurers and thus that business should be excluded from the reinsurance agreements.

---

[1]  This particular ruling is not contested or addressed on appeal to this court.

[2]  During this arbitration, the London reinsurers claimed, for the first time, according to BCS, that a block of business referred to as "ITT Lyndon" was in fact not part of the 1996 reinsurance treaty. BCS claims that Guy Carpenter had represented continuously that ITT Lyndon was in fact covered by the reinsurance agreement.

The arbitration panel ruled that the London reinsurers should recover $4,816,769. BCS paid this amount, and claims to have incurred over three million dollars in expenses and legal fees associated with the arbitration proceeding. BCS claims that the liability it owes to the London reinsurers is due to Guy Carpenter's misrepresentation and general failure to procure properly reinsurance.

## B.

BCS then brought this action against Guy Carpenter. The action included six counts: breach of contract (Count I), breach of implied contract (Count II), professional negligence (Count III), implied indemnity (Count IV), breach of fiduciary duty (Count V) and negligent misrepresentation (Count VI). On September 2, 2005, both parties moved for summary judgment.

The court held that the two year statute of limitations established by the Insurance Producers Limitations Act, 735 ILCS 5/13-214.4 ("IPLA"), applied to reinsurance intermediaries such as Guy Carpenter. After examining the authorities, the court decided that "reinsurance was subsumed within the statutory scheme of the Illinois Insurance Act and, therefore, reinsurance companies should be considered insurance producers for the purposes of the statute of limitations in Section 13-214.4." R.82, Ex.A at 7.

Having determined that the IPLA applied to reinsurance intermediaries such as Guy Carpenter, the district court held that the claims in Counts I, II, III, V and VI of BCS' complaint fell within the purview of that statute. In order to determine whether the claims were barred by the statute's two-year statute of limitations, the district court undertook an analysis of when the claims accrued.

The court held that the claims for breach of contract, breach of implied contract, professional negligence and negligent misrepresentation were claims arising out of a contractual relationship and thus accrued at the time the contract was breached. That breach occurred, held the court, at the end of 1998, when Guy Carpenter failed to negotiate and procure proper reinsurance from the London reinsurers. Therefore, the district court concluded, these claims were barred by the two-year statute of limitations because this period had expired before the parties entered into the tolling agreement in 2001.

The court then turned to the claim for breach of fiduciary duty. It first determined that the discovery rule, which tolls the statute of limitations until " 'the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused,' " applies to claims for breach of fiduciary duty. *Id.* at 10 (quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994)). The district court then determined that this claim accrued on June 5, 1998, when BCS was placed on notice that there were potential problems with the ISI program for which BCS could be held liable by the London reinsurers. Because the two-year statute of limitations would have expired before the parties entered into the tolling agreement, the district court found BCS' claim for breach of fiduciary duty to be time-barred.

Therefore, the district court granted summary judgment in favor of Guy Carpenter on Counts I, II, III, V and VI of BCS' complaint.

The district court next addressed BCS' claim for implied indemnity. The court first noted that the tolling agreement was executed in February 2001, before the arbitration in question, and thus the statute of limitations did not bar

BCS' implied indemnity claim. BCS alleged that Guy Carpenter should be required to indemnify it for costs it incurred as a result of the arbitration panel's award to the London reinsurers. The court concluded that BCS had not established that its liability to the London reinsurers was based solely on its legal relationship with Guy Carpenter. Rather, BCS was held liable to the London reinsurers because it was ISI's principal. Because BCS was unable to show it was derivatively liable in the arbitration for Guy Carpenter's actions, the district court granted Guy Carpenter's motion for summary judgment on BCS' Count IV for implied indemnity.

## II

## DISCUSSION

We review the district court's grant of summary judgment de novo. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). In doing so, we must construe all facts and make all reasonable inferences in favor of the non-moving party. *Id.* Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## A.

We first address whether the IPLA's two-year statute of limitations applies to reinsurance intermediaries such as Guy Carpenter. The IPLA requires any action "against

insurance producers, limited insurance representatives, or registered firms" concerning "any policy of insurance" be brought within two years of when the claim accrued. 735 ILCS 5/13-214.4.

Because this topic necessarily addresses an important issue of statutory construction in the governance of the insurance industry in the State of Illinois, we invited the Attorney General of Illinois to submit a brief as amicus curiae to address this issue. The Attorney General accepted our invitation[3] and, after consulting with the Illinois Department of Financial and Professional Regulation, Division of Insurance, concluded that the reinsurance agreement that is the subject of BCS' claims against Guy Carpenter is not a "policy of insurance" within the meaning of the IPLA; furthermore, in the Attorney General's view, the IPLA does not apply to parties acting as reinsurance intermediaries such as Guy Carpenter. Amicus Curiae's Br. at 2.

Although we bear ultimate responsibility for the determination of the content of state law in diversity cases properly before us, *see Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991), when we are faced with an area of particular importance to the state, we may seek the advice of the state officer charged with the administration of that state statute to aid in our determination, *Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 787 n.15 (7th Cir. 1999). When that state officer accepts our invitation to participate as amicus curiae, our work is aided significantly, and the chance of a misinterpretation on our part is reduced

---

[3] The court expresses its thanks to the Illinois Attorney General for having accepted our invitation to file a brief as amicus curiae and for having rendered assistance to the court.

significantly. *See generally* Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va. L. Rev. 1671 (1992). Consequently, we give some deference to the state officer's interpretation of the statute in question. *See, e.g.*, *Fidelity & Cas. Co. of New York v. Tillman Corp.*, 112 F.3d 302, 305 (7th Cir. 1997) ("A federal court dealing with a federal agency would respect the agency's view under the *Chevron* doctrine; at least that degree of respect is appropriate when principles of federalism are in play.").

The Attorney General noted that in *In re Liquidations of Reserve Insurance Co.*, 524 N.E.2d 538, 540 (Ill. 1988), the Supreme Court of Illinois stated that "the terms 'insurance' and 'reinsurance' have distinct and separate meanings." *Id*. In the Attorney General's view, "[t]he Illinois Supreme Court's analysis in *Reserve Insurance* should be applied here with the same result—just as a reinsurance agreement is not an 'insurance policy' . . . it is also not a 'policy of insurance.' " Amicus Curiae's Br. at 3. The Attorney General submits that reinsurance agreements are different in form and substance from policies of insurance and are accorded different treatment under the Illinois Insurance Code; this difference, the Attorney General continues, reflects the different roles of the two arrangements in the insurance market. The Attorney General further notes that a reinsurance intermediary is not considered an insurance producer under the IPLA. That act incorporates the definitions of insurance producer, registered firm and limited insurance representative from Article XXXI of the Insurance Code. The IPLA applies only to insurance producers, limited insurance representatives or registered firms, and thus it is not properly applied to reinsurance intermediaries such as Guy Carpenter. On reflection, we

believe that the Attorney General's position is a well-reasoned and persuasive explanation of Illinois' regulatory scheme. Accordingly, we also conclude that the IPLA does not apply to reinsurance intermediaries and therefore does not govern the disputed agreements between BCS and Guy Carpenter.

The district court granted summary judgment in favor of Guy Carpenter on Counts I, II, III, V and VI because, in its view, the IPLA rendered these claims time-barred. We have concluded that the IPLA does not apply to reinsurance intermediaries. Therefore, we must reverse the ruling of the district court granting summary judgment in favor of Guy Carpenter on these claims.

Because the IPLA two-year statute of limitations does not apply to any of the claims set forth in BCS' complaint, it becomes necessary to determine the duration of the statutes of limitations that do apply to those claims. The question of the proper statutes of limitations where the IPLA does not apply was not briefed before the district court. For that reason, we remand to that court for a determination of the statutes of limitations applicable to BCS' claims. However, because BCS' claim for implied indemnity arises out of the arbitration hearing that occurred after the parties entered into a tolling agreement, the statute on that claim has been tolled. We shall therefore turn to a discussion of the district court's dismissal of BCS' claim for implied indemnity.

**B.**

BCS submits that Guy Carpenter should be required to indemnify BCS for the fees, costs and losses it incurred as a result of the arbitration panel's decision to hold BCS

liable to the London reinsurers for damages arising out of the poor performance of the ISI program. Under Illinois law, implied indemnity is available to a principal who, through no fault of its own, is held liable for its agent's negligent tort against a third party. *Jinwoong, Inc. v. Jinwoong, Inc.*, 310 F.3d 962, 965 (7th Cir. 2002). Furthermore, implied indemnity is applied in situations where "the indemnitee, although without fault in fact, has been subjected to liability *solely because of the legal relationship with the plaintiff* or a nondelegable duty arising out of common or statutory law." *Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1252 (Ill. 1988) (emphasis added). The ultimate purpose of indemnification is to "shift[ ] the entire responsibility from the party who has been compelled to pay the plaintiff's loss to another who actually was at fault." *Kerschner v. Weiss & Co.*, 667 N.E.2d 1351, 1355 (Ill. App. Ct. 1996). To prevail on a claim for implied indemnity, a plaintiff must establish: (1) that there was a pre-tort relationship between the indemnitor and the indemnitee, and (2) that the indemnitee was held derivatively liable for the acts of the indemnitor. *Id*. at 1356. The liability must be wholly derivative, resulting solely out of the agent's actions. *Id.* at 1358.

The arbitration panel's grant of relief was a result of ISI's negligence. In fact, the panel stated it granted the "request for relief relating to ISI's payment of uncovered claims, late reported claims, and unreported premium and lost investment income." R.A. 93-3, Ex.2 at ¶ 61. The ISI program had performed badly and as a result BCS incurred losses. BCS submits that these losses were due entirely to the failure of Guy Carpenter to procure properly reinsurance.

In connection with the ISI program, BCS and ISI entered into a Management Agreement to govern the relationship

between the parties. This Management Agreement clearly
established that ISI was to serve as BCS' agent for purposes
of administration of the program. *Id.*, Ex.8 at Art. 1 ¶ 1.
Because the ISI program performed badly, BCS and the
London reinsurers suffered monetary losses. BCS was
forced to pay the London reinsurers a large sum of money
to compensate for these losses. However, these losses
were due, in the first instance, to the poor performance of
the ISI program. The record does not support a finding
that BCS' losses solely were due to Guy Carpenter's failure
to properly procure reinsurance. The ISI program per-
formed poorly irrespective of the existence (or non-exis-
tence) of any reinsurance agreements. Therefore, the
ultimate loss cannot be said to be wholly derivative of any
wrongdoing on the part of Guy Carpenter. Because BCS
has failed to demonstrate that its liability resulted solely
from the actions of Guy Carpenter, BCS fails to state a
claim for implied indemnity.

## Conclusion

For the foregoing reasons, the judgment of the district
court is affirmed in part and reversed and remanded in
part. We reverse the ruling of the district court on Counts
I (Breach of Contract), II (Breach of Implied Contract),
III (Professional Negligence), V (Breach of Fiduciary Duty)
and VI (Negligent Misrepresentation). We affirm the
judgment of the district court dismissing Count IV (Implied
Indemnity). BCS may recover its costs in this court.

AFFIRMED in part and
REVERSED and REMANDED in part

No. 06-1050                                                          13

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
