2025 IL App (1st) 242372-U

No. 1-24-2372

Order filed November 6, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MCMURR I, LLC, an Illinois limited liability company, and MURRAY S. PERETZ, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) ) | Cook County. |
| v. | ) ) | No. 22 L 1257 |
| LG5, LLC, a Delaware limited liability company, and DAN MCLEAN, | ) ) ) ) | Honorable Patrick J. Sherlock, Judge presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court properly granted summary judgment in favor of LG5, LLC, on its counterclaim against McMurr I, LLC, for indemnification.

¶ 2                                          I. BACKGROUND

¶ 3    McMurr I, LLC (McMurr), is an Illinois limited liability company whose members consist of Murray Peretz (Peretz) and Series G of LG5, LLC (LG5). McMurr's manager is Peretz. On or

about July 17, 2014, McMurr executed a promissory note in favor of non-party BMO Harris Bank N.A. (BMO) for a line of credit (LOC) in the amount of $1,500,000. LG5 and Peretz were co-guarantors of McMurr's obligation to BMO under the LOC. The two commercial guaranties, executed on July 17, 2014, provided that LG5 and Peretz each "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower [McMurr] to Lender [BMO], and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." More fully, the commercial guaranties each provided:

"CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or Its order, on demand, in legal tender of the United States of America, in same-day funds without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing."

¶ 4    On or about September 17, 2014, McMurr loaned LG5 $150,000 in funds advanced from the LOC. The loan repayment was due on November 30, 2014.

¶ 5 Sometime prior to December 30, 2014, McMurr loaned LG5 an additional $200,000 from funds advanced from the LOC. At the time this loan was made, the parties agreed that LG5 would repay both loans on January 31, 2015. LG5 did not repay either loan on January 31, 2015.

¶ 6 BMO did not extend the LOC's maturity date beyond April 15, 2022. On or about May 25, 2022, Peretz paid the total amount of the principal and interest outstanding on the LOC, $1,383,169.48, to BMO.

¶ 7 On February 7, 2022, McMurr filed suit against LG5 and its principal, Dan McLean, seeking over $400,000 related to LG5's breach of contract for failing to pay back the loans drawn on the LOC. Peretz also filed suit against LG5, seeking to recoup half of what he paid to BMO, LG5's *pro rata* share of the payment on the LOC pursuant to the guaranty.

¶ 8 LG5 filed a counterclaim against McMurr, asserting that McMurr was the primary obligor with respect to the obligations of the LOC, and to the extent LG5 would be found liable to Peretz, then LG5 would be entitled to a money judgment against McMurr for that amount.

¶ 9 Plaintiffs McMurr and Peretz filed motions for summary judgment against LG5 for the money it owed McMurr, and the money it owed Peretz. The circuit court granted the motions. In granting McMurr's motion for summary judgment, the court found that McMurr made two loans to LG5, and LG5 admitted that it never paid McMurr back. The two contracts between LG5 and McMurr were separate and independent from the LOC agreement between McMurr and BMO. The court found that McMurr's lack of payment to BMO on the LOC had no impact on LG5's default on its agreement with McMurr.

¶ 10 The circuit court also granted summary judgment on Peretz's claim for subrogation. Peretz argued that there was no dispute that both LG5 and Peretz personally guaranteed repayment of the

LOC and that Peretz paid the entire balance of $1,383,169.48. Peretz sought equitable subrogation from LG5 in the amount of $691,584.74, and the court agreed.

¶ 11     LG5 filed a motion for summary judgment on its counterclaim for indemnification against McMurr. The circuit court noted that there was "no question under a theory of equitable subrogation that, when Peretz paid the debt of McMurr to BMO, he became subrogated to the rights of BMO against both McMurr and LG5." The court noted that had "Peretz not stepped in and paid the LOC in full, BMO could have recovered the entire amount from either guarantor for the entire amount." It stated that an unconditional guaranty does not require a creditor to attempt collection from the principal debtor or collateral before seeking collection from the guarantor, and that in this case, the guaranty unequivocally obligated LG5 to guarantee full and complete payment of the LOC without requirement that BMO pursue McMurr or Peretz first. The court noted that Peretz could have pursued the entire amount of the LOC against LG5, but only sought one half, "as was equitable."

¶ 12     The court found that McMurr's failure to pay the LOC "led to LG5's liability under the guaranty to Peretz, as BMO's subrogor." The court stated that the "Restatement (Third) of Suretyship & Guaranty allows LG5 to seek reimbursement or to compel the primary obligor, McMurr, to perform on the underlying obligation." (Emphasis in original). However, because Peretz paid off the LOC in full, "there no longer was any performance by McMurr that LG5 could compel. Therefore, LG5 is left with only a remedy of reimbursement for the costs of performance by the secondary obligor under Restatement §§ 18, 21, 22." The court acknowledged that reimbursement suggests payment, and that LG5 had not yet paid Peretz. However, the court found that the obligation to indemnify arises when liability has been established. Here, the liability of LG5 was established when the court granted summary judgment in favor of Peretz and against

LG5 for $691,584.74, half of the LOC amount. The court subsequently granted LG5 summary judgment on its counterclaim against McMurr for indemnification in favor of LG5 in the amount of $691,584.74.

¶ 13    McMurr moved for reconsideration of the circuit court's grant of summary judgment on LG5's counterclaim for indemnification. The circuit court found that LG5's right to indemnity from McMurr "is implied as a result of the legal relationship of guarantor and obligor." The court found that it did not misapply the law and the motion to reconsider was denied.

¶ 14    McMurr and Peretz now appeal from the circuit court's grant of summary judgment in favor of LG5 and against McMurr for indemnification.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, plaintiffs contend that the circuit court's order granting summary judgment in favor of LG5 on its counterclaim for indemnification was in error because LG5 had no basis to seek indemnification from McMurr. Specifically, plaintiffs allege that the circuit court's reliance on sections 18, 21, and 22 of the Restatement (Third) of Suretyship & Guaranty was in error because LG5 had no right to performance or reimbursement. Plaintiffs contend that the Restatement's treatment of a principal obligor's duties to a secondary obligor has no application here, where the guaranty expressly made LG5 primarily liable for the LOC, and where McMurr never breached a duty.

¶ 17    Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *933 Van Buren Condo. Ass'n v. West Van Buren, LLC*, 2016 IL App (1st) 143490, ¶ 26. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Id*. We may affirm a circuit court's grant of summary judgment on any basis apparent in the record, regardless of whether the

circuit court relied on that basis or whether the court's reasoning was correct. *Id*. We review appeals from summary judgment rulings *de novo*. *Id*.

¶ 18    Here, we find that the circuit court did not err in granting summary judgment in favor of LG5 on its counterclaim against McMurr. First, we note that the contract at issue was a commercial guaranty. "[A] guaranty is a collateral undertaking, an obligation in the alternative to pay the debt if the principal does not." *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc*., 238 Ill. 2d 455, 474 (2010). A guaranty contract is construed according to the principles that govern contracts generally. See *Blackhawk Hotel Associates v. Kaufman*, 85 Ill. 2d 59, 64 (2007); Restatement (Third) of Suretyship & Guaranty § 14 (1996) ("[t]he standards that apply to interpretation of contracts in general apply to interpretation of contracts creating secondary obligations"). According to Comment c of Section 1 of the Restatement (Third) of Suretyship & Guaranty, suretyship and guaranty are the two most common contractual mechanisms resulting in suretyship status. Restatement (Third) of Suretyship & Guaranty §1 (1996), Comment c. A "surety" is typically jointly and severally liable with the principal obligor on an obligation to which they are bound, while a "guarantor" typically contracts to fulfill an obligation upon the default of the principal obligor. *Id*. Both sureties and guarantors that fulfill Section 1 have suretyship status, and the rights associated with that status are the "same for sureties as for guarantors." *Id*.

¶ 19    Section 1 of the Restatement (Third) of Suretyship & Guaranty states that this Restatement applies and a secondary obligor has suretyship status whenever, pursuant to contract, an obligee has recourse against a person or that person's property with respect to the obligation of another person to that obligee. *Id*. §1. Additionally, where an obligee has recourse against a secondary obligor for an underlying obligation, the suretyship relationship exists regardless of "whether the secondary obligation is conditional or unconditional." *Id*., Comment j.

¶ 20    Here, McMurr, as the borrower, was the principal obligor to BMO (the obligee). Peretz then stepped into the shoes of BMO as the obligee when it paid off the LOC to BMO. See *In re Marriage of Millikin*, 199 Ill. App. 3d 813, 819 (1990) ("The doctrine of subrogation allows a person who, pursuant to a legal liability, is compelled to pay an obligation of another, to obtain reimbursement from the party who is primarily liable."). The commercial guaranty was the secondary obligation. LG5 had suretyship status under the Restatement because, pursuant to the guaranty (the secondary obligation), Peretz had recourse against LG5 with respect to the original obligation (the LOC). Accordingly, the Restatement applies, and LG5, as the guarantor, was the secondary obligor. The fact that LG5's guaranty was "absolute" and "unconditional" does not make it a principal obligor on the LOC. See Restatement (Third) of Suretyship & Guaranty § 1, Comment j (suretyship status arises whether the secondary obligor is unconditionally liable along with the principal obligor or is only conditionally liable after default by the principal obligor).

¶ 21    Having found that the Restatement applies, the question becomes whether it was proper for the circuit court to enter summary judgment against McMurr, the principal obligor, for indemnification of the amount LG5 now owes Peretz.

> "Indemnity is a common law doctrine which shifts the responsibility from the party who has been compelled to pay the plaintiff's loss to another who actually was at fault. The right to indemnity may be express, as in a contractual provision, or may be implied in law, arising in situations in which a promise to indemnify can be implied from the relationship between the parties." [Citations omitted] *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 502 (1996).

¶ 22    McMurr and Peretz contend that LG5 cannot be indemnified by McMurr for the money it owes Peretz because it has not yet paid that money to Peretz. LG5 maintains that under the

Restatement (Third) of Suretyship & Guaranty, the duty to indemnify arose when LG5 had a judgment entered against it for half the amount of the LOC that Peretz had paid off. We agree with LG5.

¶ 23    Section 18 of the Restatement (Third) of Suretyship & Guaranty outlines the recourse options for a secondary obligor against the principal obligor. Those options include: (a) enforcement of the principal obligor's duty of performance; or (b) enforcement of the primary obligor's duty to reimburse the secondary obligor. Section 21 describes the principal obligor's duty of performance:

> "(1) if the principal obligor is charged with notice of the secondary obligation (§ 20), the principal obligor has the duty to the secondary obligor
>
>> (a) to perform the underlying obligation to the extent that failure to do so would leave the secondary obligor liable for performance that would entitled the secondary obligor to reimbursement by the principal obligor, and
>>
>> (b) to refrain from conduct that impairs the expectation of the secondary obligor that the principal obligor will honor its duty to perform.
>
> (2) Upon breach by the principal obligor of a duty set forth in subsection (1), the secondary obligor is entitled to relief that will properly protect its rights with respect to the principal obligor's duty of performance." Restatement (Third) of Suretyship & Guaranty § 21 (1996).

¶ 24    As can be seen, this section does not require the guarantor (secondary obligor) to make a payment before seeking a remedy. Rather, the remedy exists where the principal obligor (McMurr), exposes the guarantor (LG5) to liability, and the guarantor is "entitled to relief that will

properly protect its rights with respect to the principal obligor's duty of performance." *Id*. The comments to Section 18 note that if the principal obligor breaches its duty, and the secondary obligor is called on to perform the secondary obligation, the principal obligor will have the duty to reimburse the secondary obligor. However, the comments acknowledge that "it is inequitable for the secondary obligor to be compelled to suffer the inconvenience and temporary loss that performance of the secondary obligation will entail. Thus, if the principal obligor has no defense to its duty of performance, the secondary obligor is entitled to appropriate relief protecting its interest." *Id*., Comment i. Accordingly, it was not necessary for LG5 to pay out its guaranty before seeking relief from McMurr on the amount it owes to Peretz. Rather, when the judgment was entered against LG5, for half the LOC amount, LG5's liability attached. It would be inequitable to make LG5 pay that amount before allowing it to bring an indemnification claim against McMurr for that amount. We find that the circuit court properly granted LG5's motion for summary judgment on its counterclaim for indemnification from McMurr for the amount it owes Peretz.

¶ 25    As a final matter, we address plaintiffs' arguments that LG5 has waived its right to indemnification from McMurr by virtue of the language in the guaranty. The guaranty states that LG5 "waives any and all rights or defenses based on suretyship ***" and agreed "not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment, or similar right, whether such claim, demand, or right may be asserted by the Borrower, the Guarantor, or both." This language is identical to that which appears in Peretz's guaranty. The commercial guaranties, signed by both LG5 and Peretz, were made in favor of BMO, the lender, not McMurr, the borrower. Accordingly, the defense of waiver is enforceable between the guarantor (LG5) and the lender (BMO), making the guarantor's obligation to the lender unconditional. Here, LG5 did not raise waiver as a defense to

paying half of the LOC to Peretz (who had stepped into the shoes of the lender, BMO). In fact, the judgment against LG5, in favor of Peretz, for half the amount of the LOC, still stands and has not been appealed. Rather, LG5's counterclaim was a separate claim against McMurr, the borrower, for indemnification for the amount it owed Peretz after judgment was entered against LG5. The waiver that appeared in the guaranty does not apply here, and a guarantor may certainly seek indemnification from the borrower if there is no separate agreement waiving those rights, as was done here.

¶ 26                          III. CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.